ALPHEUS C. BADGER

*v.*

SARAH GALLAHER *et al.*

*Filed at Springfield May 14, 1885.*

CONTRACT *for services of an attorney—when performed, under a provision to remove an incumbrance upon property.* The owner of certain lots gave to an attorney a contract, wherein it was recited there was claimed to be an incumbrance upon the property, and that it was agreed the attorney should undertake, to the best of his ability, by suit or otherwise, at his own expense, to remove the incumbrance and release the lots from the pretended lien or claim of the same, in consideration of which the maker of the contract was to give the attorney full charge and management of the proceedings, and as compensation for his services and expenses pay him $4000 in cash or transfer to him one-half of the lots, at the option of the maker, "when, and not until, the undertaking of the said B. (the attorney) in the premises" should be fully performed: *Held,* that the attorney was not entitled to any compensation unless he should first remove the incumbrance from the lots, or some part thereof, and that he could not recover merely because he had succeeded in reducing the amount claimed against the property. His undertaking was to remove the incumbrance, and until that was done he was not entitled to anything for his services.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. W. T. BURGESS, for the appellant:

The court below denied the relief on the broad ground that Badger was not entitled to any relief, as he had failed to remove the whole of the incumbrance, so that for his services and expenses, if only one dollar of the original incumbrance had been left, he was not entitled to anything, but loses the whole of them outright. The contract should not receive so unreasonable a construction, if capable of receiving any other. The court should look at the intent of the parties from the entire contract.

If there is any doubt as to the meaning of the contract, it should be construed most strongly against the maker. *Walker* v. *Kimball*, 22 Ill. 539; *Massie* v. *Belford*, 68 id. 290; *Richardson* v. *People*, 85 id. 495.

The recital does not control the operative part of the instrument, but is only used in aid of it. *Walker* v. *Tucker*, 70 Ill. 527; *Trower* v. *Elder*, 77 id. 452; *Bell* v. *Bruen*, 1 How. 169.

Badger's agreement was not to make a machine, but to manage a law suit; nor did he undertake to pay the incumbrance.

Mr. JAMES E. MUNROE, for the appellees:

Where the language of a contract is unequivocal, there is no room for construction, and the courts will enforce the same according to its legal effect, even though it fails to express the real intentions of the parties. *Benjamin* v. *McConnell*, 4 Gilm. 536; *Canterberry* v. *Miller*, 76 Ill. 355; *Walker* v. *Tucker*, 70 id. 527.

Due effect must be given to all of the words employed by the parties in expressing their agreement, and such effect must be given to it, if possible, that no clause, sentence or word shall be superfluous, void or insignificant. *McCarty* v. *Howell*, 24 Ill. 341; *Bowman* v. *Long*, 89 id. 19.

The recitals contained in an agreement are a part of it, and may restrain or limit the generality of the operative part; and if the operative part be doubtful or ambiguous, the recitals may be used as a test to discover the meaning of the parties, and fix the true meaning of the words. *Bell* v. *Bruen*, 1 How. 169; *Walker* v. *Tucker*, 70 Ill. 527.

A party seeking specific performance must show that he has performed his part of the contract. *O'Kane* v. *Kiser*, 25 Ind. 168; *Brown* v. *Cannon*, 5 Gilm. 174; *Walker* v. *Douglas*, 70 Ill. 445; *Benedict* v. *Lynch*, 1 Johns. Ch. 369.

On contracts for services for a stated time, for a consideration, no recovery can be had unless the services have been

rendered for the full time agreed upon. *Eldredge* v. *Rowe,* 2 Gilm. 91; *Badgely* v. *Heald,* 4 id. 66; *Hansell* v. *Errickson,* 28 Ill. 257.

Appellant's contract is an entire contract, and substantial performance of it by appellant is a condition precedent to a recovery on his part, at law and in equity, and neither law nor equity will give relief by apportionment of compensation upon the principle of a *quantum meruit.* *Walsh* v. *Shumway,* 65 Ill. 471; *Pike* v. *Butler,* 4 Comst. 360.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court for the First District, affirming a decree of the Superior Court of Cook county, dismissing a bill, in the nature of a bill for specific performance, brought by appellant, against appellees.

It appears that Samuel J. Walker, being the owner in fee of lots 29 and 30, block 13, Walker's dock addition to Chicago, on the 29th day of December, 1871, conveyed the same to John Rogers, as trustee, to secure a promissory note of that date, for the sum of $25,000, executed by the said Walker, and payable to his own order at the Second National Bank of Chicago, eighteen months after date, with interest at the rate of eight per cent per annum, the conveyance being properly recorded on the 5th of January following. The note and trust deed were transferred by Walker to the International Bank of Chicago, to secure other notes given by Walker for advances and loans made to him by that bank. On the 1st of September, 1873, Walker and wife conveyed the lots in question, with full covenants of warranty, to William G. Gallaher, the conveyance being recorded on the 24th of October, 1873. In 1878, without consideration, Gallaher quitclaimed the premises to Francis A. Riddle, who thereafter held the same in trust for Gallaher. The International bank transferred the principal notes given to it by Walker for loans and

advances, and with them the $25,000 note and trust deed, together with other collaterals given to secure them, to Rosenfeld & Rosenberg. In the spring of 1878, Walker having become a bankrupt, Robert E. Jenkins was appointed his assignee, appellant being a creditor of his to the amount of $300,000. On the 23d of May, 1879, Rosenfeld & Rosenberg filed a bill in the circuit court of Cook county, against Walker and others, to foreclose the trust deed executed to Rogers, trustee, as heretofore stated.

While matters were in this condition, appellant, supposing Riddle to be the real owner of said lots, subject to the apparent incumbrance of Rosenfeld & Rosenberg, for the consideration therein mentioned, made with him the following written agreement, to enforce which the present bill was filed:

"Whereas, Francis A. Riddle is the owner of lots 29 and 30, in block 13, of Walker's dock addition, in section 30, north of the river, in township 39 north, range 14, east of the third principal meridian, in the city of Chicago, Illinois, upon which there is an incumbrance now held by Rosenfeld & Rosenberg, by assignment from the International Bank of Chicago. And whereas, Alpheus C. Badger has undertaken to remove said incumbrance—

"Now, therefore, it is agreed between said parties as follows: That the said Badger shall undertake, to the best of his ability, by suit or otherwise, but without expense of any kind to said Riddle, to remove said incumbrance, and to release said lots from the pretended lien or claim of the same, and in consideration of such undertaking the said Riddle hereby agrees to give the said Badger full charge and management of such proceedings as he, the said Badger, may think necessary to carry on, including any suit or suits which may be now or hereafter commenced against said lots for the foreclosure of said incumbrance; and as compensation for the services and expenses of him, the said Badger, in and

about the premises, the said Riddle agrees to pay the said Badger either the sum of $4000 in cash, or transfer to him one-half of the said lots by special warranty, and according to the option of said Riddle, when, and not until, the undertaking of the said Badger in the premises above mentioned shall have been duly performed, but any transfer of any interest in said lots to said Badger to be made subject to all taxes and assessments; and it is understood that said transfer shall only be of one-half of said lots which may remain after said incumbrance shall be released, removed or satisfied,— it being specially understood that said Riddle has the option of paying the sum of $4000, or conveying half of the said lots, as above stated, and such conveyance, or the payment of said $4000, shall be in full satisfaction of said Badger's services and expenses hereunder.     FRANCIS A. RIDDLE.

"CHICAGO, ILL., *November 6, 1879.*"

In pursuance of this agreement, appellant took charge of the defence of the suit of Rosenfeld & Rosenberg to foreclose the trust deed, which had already been commenced, as above stated, and also filed therein a cross-bill. The case was brought to a hearing in April, 1881, when a decree was rendered in favor of complainants for $4469.68, and in default of payment within twenty days from date of decree, the master was ordered to sell the premises, or so much thereof as might be necessary to discharge the same, together with costs and expenses of sale. That decree was finally affirmed in this court. On the 27th of November, 1882, the premises were sold under the decree, by the master, to Rosenfeld & Rosenberg, for $5132.38, being the amount of decree, interest, costs, and expenses of sale, and the purchasers received from the master the usual certificate of purchase.

Upon Riddle's payment of the decree to Rosenfeld & Rosenberg, he was, by a provision contained in it, subrogated to their rights respecting the collaterals given by Walker to se-

cure the principal notes representing the loans made by the International bank to him; but just what these securities are, and whether they are of any value or not, is not sufficiently disclosed by the present bill to make them a ground for equitable relief, and hence no further notice will be taken of them. Even conceding appellant is equitably entitled to some compensation for his services and expenses in the foreclosure proceedings, or on account of substantial benefits accruing to appellees therefrom,—a matter about which it is unnecessary to express any opinion,—it is sufficient to say such relief does not come within the scope and theory of the bill, and even if it did, the allegations and proofs in that respect are so fatally defective as to leave it wholly uncertain whether the appellees were benefited by his services or not.

This phase of the case, barely foreshadowed in a general way, we presume was only intended as a mere make-weight to the main grounds upon which appellant relies for relief,— namely, his rights growing out of and dependent upon the contract of November 6, 1878, above set forth. If his construction of that contract is correct, the decree in this case is erroneous, and the Appellate Court erred in not reversing, otherwise it was properly affirmed.

The contention of appellant is, that the contract in question, when relieved of all unnecessary verbiage, and expressed in plain, unequivocal English, means simply this: Badger undertakes, to the best of his ability and at his own expense, by such legal proceedings as he may be advised are necessary, including the suit pending, to remove the stated incumbrance on the land in question, and when he shall have done all that he can, then, for his services and expenses in that behalf, he is to have $4000 cash or one-half of the land, subject to the taxes and assessments, and the incumbrance, if any of it is left on the land, Riddle to make a special warranty deed, subject to taxes, assessments, and anything left of the incumbrance, and to have the option which he will do,—

or, more shortly stated, Badger was, at his own expense, to take charge of and conduct the litigation "to the best of his ability," and when concluded, Riddle was to pay him, without regard to its success, $4000, or make him a special warranty deed, subject to taxes and assessments, and also to incumbrances, if any, for one-half of the property. We do not think this is a fair or reasonable construction of the contract, nor can it, in our judgment, be maintained without rejecting altogether not only its recitals, but also some of the provisions in the body of the instrument. Thus, in the event Riddle elects to convey instead of paying the $4000, it is expressly provided "that said transfer shall only be of one-half of said lots *which may remain after said incumbrance shall be released, removed or satisfied,*" while appellant's construction would require him to convey one-half of the property even if the whole of the incumbrance was still existing. It is manifest, from the language just cited, that the parties did not contemplate a conveyance of the lots, or any part of them, or interest therein, that was subject to the incumbrance which Badger had undertaken to remove. But they did contemplate and provide for the contingency of removing the incumbrances from a part of the premises, only, in which event it was intended the part from which they were so removed should be equally divided between them, subject to the right of Riddle to keep the whole of the part thus relieved from the incumbrance, by paying to appellant $4000, should he elect to do so.

Considering all the provisions of the instrument, we think it reasonably certain appellant's compensation was not intended, in any event, to exceed $4000, and it is equally clear, in our judgment, that if no part of the lots was relieved from the incumbrance,—or, in other words, if the incumbrance absorbed the whole of the property,—he was to receive nothing; yet if anything was saved out of it, be it much or little, he was to receive half of it, or $4000, at the election of

Riddle. While the contract, in some respects, is inartificially drawn, yet we think the intention of the parties is quite apparent. The fact that an incumbrance existed on the lots in favor of Rosenfeld & Rosenberg, is first recited. Then follows the statement that Badger has undertaken to remove the incumbrance. This is to be done by him without expense of any kind to Riddle. He is to carry out the undertaking "to the best of his ability,"—that is, he is to give the matter his best judgment, and there is to be no neglect on his part. For his services and expenses he is to receive, if he succeeds, "either the sum of $4000 or one-half of the lots, at the option of Riddle." But when is this compensation to be made? The contract answers this question in express terms. It declares that it is to be made *"when, and not until, the undertaking of the said Badger in the premises, above mentioned, shall have been fully performed."* As the undertaking, as we have just seen, was "to remove the incumbrance," it is evident that nothing but the removal of it could, with any propriety, be regarded as a performance of the undertaking. The logic of appellant's construction of the contract is to make the undertaking and its performance one and the same thing,—a position which, of course, is wholly inadmissible.

The other features of the contract we have already sufficiently discussed, and what we have said need not be repeated in this connection.

In the view we take of the agreement, it is clear there has not been such performance or part performance under it as gives appellant any standing in a court of equity, and the bill was therefore properly dismissed.

*Judgment affirmed.*