GEORGE A. LOFTON, APPELLANT, VS. NORMAN B. STERRETT, ET AL., APPELLEES.

1. A resulting trust in real estate may be proved by parol testimony, but such proof must be full and clear.

2. Where the testimony not only fails to show that the complainant is the equitable owner of any definite interest in the real estate, but does show acts and conduct upon his part inconsistent with a claim of such ownership as against the parties holding the legal title, the trust should not be decreed.

Appeal from the Circuit Court for Duval county.

The original bill in this case was filed by appellant May 25th, 1885.

On September 25th of the same year complainant obtained leave to amend his bill, stating the amendment to be made, and a copy of the bill as amended appears in the transcript. This bill alleges that complainant is the son of Alexander Lofton, and was a minor at the time of the transactions referred to in the bill; that at the said time he had a sister, Jennie C., living, who was also a minor, and unmarried; that on June 2d, 1872, he and his sister were possessed of certain sums of money deposed in their own names in a bank in the city of Jacksonville, in Duval county, to their separate accounts; that upon said day there was offered for sale at a

tax sale of lands in and for said county, for the non-payment of taxes, the west half and northeast quarter of lot 6, in block 59, according to Hart's map of the said city, and it was duly sold to one Henry Brown, to whom a certificate of sale was duly given; and that on said day complainant drew from the money he had in the bank the sum of $40, and his sister at the same time drew from her money $23.17, and requested their said father to purchase said certificate at said sale for their use and account; that the certificate was duly purchased of Brown on account of complainant and his sister, he paying $40 towards the purchase and she paying $22; that on March 3d, 1875, a deed of conveyance of the land was obtained on the certificate by the father, he taking the title in his own name, in fraud of the rights of the complainant and his sister, but that the father " did, and always has, and to this day admitted the equitable title to said land so purchased to be in complainant and his sister;" that afterwards, the sister, the said Jennie C., became united in marriage to the defendant, Norman B. Sterrett, and at the time of the marriage, the father, at her request, and in fraud of complainant's rights in the land, conveyed the north half of the lot to said Jennie, she well knowing complainant's rights in the premises, and promising to secure to complainant his proportionate share of said land, which he claims to be " a forty sixty-second (40-62) undivided part of said land so conveyed to said Jennie C." Thereafter, the said Jennie, having married the said Norman B. Sterrett, as aforesaid, departed this life intestate, without having made a reconveyance to complainant of his share, she leaving two children by said marriage, viz: Mary and Norman, and her said husband, Norman B., surviving her.

The prayer is that the deed of conveyance to said Jennie C. be set aside, and declared null and void, in so far as

complainant's interest in said land is concerned ; that the father, Alexander, be declared to be the trustee of the legal title of complainant's interest in the land, and ordered to convey to complainant his said undivided share in said land, and for general relief.

The infant defendants, Norman and Mary, answered through their guardian *ad litem*, on November 2d, 1885.

Norman B. Sterrett, under an agreement made November 2d, answered the bill on the 17th day of that month. His answer admits that complainant is the son of Alexander Lofton, and brother of Jennie C., but says : " He knows nothing of his knowledge of the transactions designated in the bill as ' transactions hereafter referred to,' except as hereinafter shown." It also admits the execution of the deed to Alexander, but says it is not true that either the naming of said Alexander as grantee therein was in fraud of the rights of complainant and Jennie C., or that said Alexander " did, and always has admitted " the equitable title to said land to be in complainant and his sister.

It states that defendant and said Jennie C. intermarried June 21, 1877, and on January 10th, 1878, the said Alexander and his wife conveyed to said Jennie the north half of said lot 6, and the deed was recorded on the 13th day of said month, in the office of the Clerk of the Circuit Court of Duval county. It denies that complainant furnished $40 of the consideration paid for the certificate or land conveyed thereunder March 3, 1875, to said Alexander, but alleges that he " furnished or loaned the sum of sixteen dollars, and no more." It states that at the time the deed was executed the matter was discussed in defendant's presence by Alexander, the complainant, and said Jennie, and the complainant claimed of Jennie that she owed him on account of the money so claimed to have been advanced by him the sum

of $16, whereupon Alexander promised to repay him said sum, and this proposition was accepted as satisfactory by complainant at the time; and that it is wholly untrue that she, before, upon or after said conveyance to her, promised or undertook to reconvey to complainant any part of said land, nor did she recognize or admit, nor was it claimed in her life time that she was under any promise or obligation in respect to said land, or that it, or any part thereof, was legally or equitably in complainant " as his proportionate share, or otherwise, on any account whatever."

The answer admits that said Jennie C. died intestate, leaving respondent and the two children as her sole heirs at law, and without having executed a conveyance to complainant.

It alleges that the complainant "so far from claiming that the property in said lands, or any part thereof, was his, and so far from making any demand for a conveyance in execution of an alleged promise so to convey, acted as the agent of this respondent, and collected for him the rents, incomes and profits of the same, and in every way recognized the property as the property of this respondent; that it was only when this respondent expressed in a letter to complainant his impatience that the property was permitted to be advertised for sale for taxes, that complainant referred to a claim by him upon the property; but that this reference was to a claim long before settled. This letter, "Exhibit A," is to be found in the statement of the testimony.

The answer sets up "for a plea in this behalf * * that seven years and more have elapsed since the alleged promise to convey, as set up in said bill, and that complainant is barred by his laches for the relief herein prayed."

The plaintiff filed a replication. He also entered a

decree *pro confesso* against the defendant, Alexander Lofton.

The testimony is substantially as follows: Felicia Whitsell testified in behalf of complainant as follows: She is a daughter of Alexander Lofton, and sister of Jennie C., and knows parties to the cause, and the property in question; she went to the bank with complainant and said Jennie C., and they drew money as follows: George $40, and Jennie $20, and something over. "After the money was drawn they went down to Mr. Henry Brown and bought certificate;" does not know Mr. Brown's full name, but knows he goes by the name of Henry Brown; "they bought a tax certificate; they used the same money they drew from the bank; I went with them to Henry Brown's; they carried the certificate to where my father was working and gave it to him." Witness did not read the certificate, and does not recollect what year it was they went to the bank, but thinks it was some time in March, but is not certain; was living with her father at the time. George and Jennie each had a bank book. It was the Freedman's Savings Bank. Jennie C. died about five years ago (*i. e.* five years before April 15, 1886, the day the witness testified); witness is 35 years old, and about five years older than Jennie, who was about three years older than George.

Alexander Lofton, witness for complainant, testified: That he received the tax certificate from his children, George and Jennie, and carried it to the clerk of the Circuit Court, and the deed was made out in witness' name; had the deed made out in his name "because there was a law suit commenced on the property," and because he had to attend to the law suit, as George was a minor. Witness gave a deed of this property to Jennie C. Sterrett; "gave her a deed with the promise that she give George his share of the property." Had this talk with her five or six

months before he gave her the deed; considered that Jennie and George owned the property.

Rebecca Lofton testified, April 15, 1886, that she is the mother of George and Jennie; George is 24 years old, and Jennie six years older.

John Henry Brown testified that he purchased the property at a tax sale made by Peter Jones, tax collector; that he sold the tax certificate, which is introduced in evidence, to George and Jennie C., in October, 1873; witness bought the property in June, 1873; it was sold as the property of Frank Solana; Mrs. Whitsell, Peter Jones, and the complainant, and Jennie C., and Abram P. Brown, brother of witness, were present when witness sold the certificate; some people call witness Henry, and some call him John; he always signs his name John H. Brown.

Rebecca Lofton, re-called for complainant, testified that the defendants, Mary and Norman, are the children of Jennie C.; that she, witness, heard Jennie C. say, previous to her marriage, that she would give George his share of the property. And Felicia Whitsell being re-called and asked if she ever heard Jennie C. make any remarks previous to her marriage in regard to the ownership of the land in question, replied: "She always said that the land belonged to her and George."

The tax certificate bears date June 22, 1873, and states that the sale was made on the second day of that month. It is to John Henry Brown, and was transferred by him to Alexander Lofton for value received. It bears an endorsement stating that a deed was executed to Alexander Lofton, March 3, 1875.

Exhibit " A " to the answer is as follows, in so far as it concerns this controversy :

"JACKSONVILLE, Fla., July 30, 1882.

" DEAR BRO.: As you are so anxious for a letter of ex-

planation as to your ' rents,' I shall give it in detail.  Mrs.
Randell moved out the first of May ; the house was vacant
that month.  On the sixth of June Mr. Poetting moved in.
He settled in advance, which was given to mother.  He
moved out on the 5th inst., so this left the house vacant to
date.  I cannot rent the house for no more than ten dollars
on account of the water being so bad ; no one don't use it.

" Whitsell has driven a pump in his yard, and won't let
anybody but his tenants use the water ; and as to the
house in which Aunt Jane lived the parties to whom it
was rented stayed but two months.  No one cannot live in
it, it leaks so badly ; and as to the shop rent, Williams
pays promptly.  The money that paid your interest I got
from Williams.  Now, do you expect for me to pay the
taxes and interest with the money that I got from Wil-
liams ?  You said there was not occasion at all for your
property to be advertised, but when there is no income
from the property it must be advertised.  I have paid the
taxes, and you will find enclosed receipt for the same, as
requested.  The manner in which your letter was written,
Mr. Sterrett, gave me a conception that you think I have
been squandering your rents, but, believe me, sir, I have
never spent any of that rent since you have had it in your
possession.  I always can get a dollar without using your
rents.  In fact, Mr. Sterrett, had I used any of the rent I
would not be doing anything but right, but as father saw
fit to satisfy one whom he loved by taking my share, he did
so.  I do not regret it as to her and her young, but I do
not want to be censured by you every year as to the tax,
&c.

" The houses are vacant at present.  I can rent the large
house if you will agree to let the man take $2 every month

to help put a pump in. Nobody don't want to rent, because there is no water.    *   *   *

                           " G. A. L."

The Chancellor dismissed the bill and complainant appealed.

*Geo. Wheaton Deans* for Appellant.

*A. W. Cockrell & Son* for Appellees.

MR. JUSTICE RANEY delivered the opinion of the court:

We feel satisfied that the consideration for the tax certificate was paid by the complainant and his sister Jennie, who subsequently intermarried with Norman B. Sterrett, one of the defendants. Though it is not expressly proved when the transfer of the certificate to Alexander Lofton, the father, was executed by Brown, the presumption is that it was done at the time he sold it to the children. This transfer or assignment is endorsed on the back of the certificate, and, although it is without date, it is proved that the certificate was carried by the children from Brown to their father, and there is nothing to show that Brown ever had any further connection with it. As against the father a trust resulted in the certificate, and in the rights it gave to a title to the land, and was carried into the land itself by the subsequent acquisition of the legal title by the father under the certificate. Perry on Trusts, sections 124, 126, 130, 127, 148. He admits the trust.

What the exact amount of the consideration paid to Brown, or the portion of it paid by each of the two children was, we are not informed.

The answer of Norman B. Sterrett states that at the time the deed from the father to Mrs. Sterrett was executed the matter was discussed in his presence by the father, and the

complainant and Mrs. Sterrett, and complainant claimed that Mrs. S. owed him $16 on account of that sum advanced by him to purchase the certificate, and that the father promised to repay him this sum, and that this promise was accepted by complainant as satisfactory at the time. This part of the answer is responsive to the bill, and is at least a circumstance indicating that the money demanded was the only claim or objection he had against a conveyance of the two-thirds of the land to his sister.

The letter of July 30, 1882, from complainant to Norman B. Sterrett, must be regarded as referring to the property in question ; and it shows that the complainant was acting as agent of the defendant in renting and managing the property and paying taxes, and that he regarded it as the property of the mother and the three defendants, her heirs. The following statement of the letter: " In fact, Mr. Sterrett, had I used any of the rent I would not be doing anything but right ; but as father saw fit to satisfy one whom he loved, by taking my share, he did so. I do not regret it as to her and her young, but I do not want to be censured by you every year as to the tax, &c.," and the allegations of the answer as to the $16, and the discussion at the time of the execution of the deed to Mrs. Sterrett, and the fact of the recognition of the title of her heirs, (her husband and children,) derived from her, and consequently of her title under this deed, produce in our minds the conclusion that there was an assent upon complainant's part to the conveyance to Mrs. Sterrett, and that he did not at the time of the execution of such deed to her claim any resulting trust in the land conveyed by it.

It is true that at the time the conveyance to Mrs. Sterrett was made the complainant was a minor, but according to the testimony of one of the two witnesses who speak as to his age, he reached his majority in 1880, and he, by his acts,

shown by the letter referred to above, and performed subsequent to attaining his majority, ratified the agreement by which he assented to the conveyance to his sister. Schouler's Domestic Relations, §§438 and 439. According to this testimony about five years intervened between his attaining his majority and the filing of this bill, and there is no act of his brought to our attention as occurring during this period which shows any disposition to disturb the title of his sister. The quotation given from his letter disclaims even any regret as to the deed having been made, in so far as his sister and her children were concerned, and, considered as a whole, and in connection with the other parts of the letter, cannot be regarded as indicating any desire or intention to disturb it as against any one.

The rule in cases of this character is, that the complainant's proof must be full, and clear and unequivocal. Baker vs. Vining, 30 Me., 121; Sayre vs. Fredericks, 17 N. J. Eq., 205 ; 11th Humphreys, 83. If we ignore the objections of the inadmissibility and illegality of some of the testimony as relating to transactions with a deceased person, and consider all of it as set forth in the statement of the case, we still find ourselves unable to say that we are satisfied from the proofs that the complainant is entitled to a decree that he is the equitable owner of any particular portion or interest in, or quantity of, the land in question. The proofs do not justify any such decree against the heirs of Mrs. Sterrett. Baker vs. Vining, *supra ;* McGowan vs. McGowan, 14 Gray, 119 ; Olcott vs. Bynum, 17 Wall., 44 ; Reynolds vs. Morris, 17 Ohio St., 510. The burden is upon the complainant to make clear proof of his case, and to enable the court to decree that he is entitled to a definite interest in the land as against the party holding the legal title ; and if he fails to do this the bill must be dismissed. It has, we are aware, been held that in the absence of spe-

cific proof of the exact amount contributed by each of the real purchasers, the presumption is, that each furnished an equal part of it; (Shoemaker vs. Smith, 11 Humphreys, 81,) but in view of the testimony before us we do not think such rule can be reasonably invoked as between the complainant and his sister or her heirs. Not only is there no proof showing what particular portion of the purchase money of the whole land conveyed to the father was contributed by the complainant, but the subsequent dealings between him and his sister and father are inconsistent with his claim to any interest in the land conveyed to his sister. The fact that we are left in the dark as to what disposition has been made of the balance of the land conveyed to the father, and, consequently, do not understand the whole matter of the alleged trust as between the complainant and his sister or her heirs, does not strengthen the complainant's case. Baker vs. Vining, 30 Me., 125 ; Gascoigne vs. Thwing, 1 Vernon, 366 ; all that can be done, in view of the testimony, is to leave the complainant and the heirs of his sister where his own dealings have placed them, and recognized them as entitled to stand.

The decree is affirmed.