BULA E. CROKER, *Appellant*, v. PALM BEACH ESTATES, A CORPORATION, AND J. B. MCDONALD, *Appellees*.

En Banc.

Opinion Filed July 11, 1927.

*Treadwell & Treadwell* and *John B. Singletary,* for Appellant;

*Fleming, Hamilton, Diver, Lichliter & Fleming* and *Blackwell & Donnell,* for Appellees.

ELLIS, C. J.—This is an appeal from an order overruling a motion to strike certain portions of the joint and several answer and overruling exceptions to certain portions of the joint and several answer and counterclaim of the defendants, Palm Beach Estates and J. B. McDonald, to the bill of complaint exhibited against them by the complainant, Bula E. Croker. The order was made July 10, 1925.

The appeal was also taken from an order dated September 19, 1925, denying complainant's petition for a rehearing on the motion to strike and the exceptions to certain

portions of the answer. The notice of appeal was filed October 28, 1925.

On July 12, 1920, Bula Croker and her husband, Richard Croker, so it is alleged in the bill of complaint, were the owners of a certain tract of land in Palm Beach County in Sections 11-14 and 23 in Township 44 South, Range 43 East. The property consisted of a narrow strip of land lying between Lake Worth and the Atlantic Ocean. The owners desired to sell it and to that end negotiated with the defendant, J. B. McDonald, a real estate agent, broker, or realtor, of good reputation and substantial business interests. The Crokers were considering a visit to Ireland, the native land of the complainant's husband, negotiations concerning the sale and disposition of the lands and the price they were to bring and the commissions to be paid, having been completed. The parties pursuant thereto entered into an agreement in which the Crokers were described as "principals" and McDonald as "agent." It was recited that the Crokers had conveyed the lands to the "agent" in order to carry out the agreements; that in consideration of the mutual covenants and agreements and the profits to accrue to the "principals and to the agent" it was covenanted and agreed:

First, during five years succeeding the date of the agreement the "agent" should use all reasonable diligence to sell the lands upon the terms and conditions set out in the agreement. The conditions were: (a) That the lands were to be sold in tracts not less than one hundred feet wide measured from north to south and extending from the east edge of the channel of Lake Worth to low-water mark on the Atlantic Ocean with all riparian rights at both ends; and from all sales of land having a frontage on the Atlantic Ocean a strip of land thirty feet wide, now occupied by the Ocean Boulevard, should be excluded; (b) The lands were

to be sold for not less than $150.00 per front foot measured in a northerly and southerly direction; (c) All purchasers were to be required to pay at least one-fourth cash and the balance in not longer than one, two and three years in equal payments, with interest at six per cent per annum for deferred payments, secured by first mortgage on the property. It was agreed that the principals during the five years following would pay when and as due all taxes. As each sale was made the principals were to be "reimbursed the proportionate amount of taxes paid on the land so sold for the period with the date of such sale," with interest on the minimum price of $150.00 per front foot at six per cent per annum for such period; all excess over and above the total amount of said minimum sale price and interest and taxes should be "retained by said agent as his remuneration for selling said lands and reimbursement to him of expenses incurred therein"; that at the end of five years the principals or the survivor of them or the heirs, legal representatives or assigns of said survivor, will extend the agreement to cover all "said lands then unsold for an additional five years next thereafter if the said agent shall agree to pay, and pay when an as due, interest at the rate of five per cent per annum" on the value of the then unsold parts of said property at $150.00 per front foot and pay all taxes during the additional five years.

The fourth clause of the contract was as follows:

"At any time during the first five years of the term of this contract, or at any time during the next five years thereafter, if the agent shall have exercised the option in the next preceding paragraph, the said agent may, at his option, pay the said principal, in cash, one-third of the value of all of the then unsold parts of said lands, based on the valuation of one hundred and fifty dollars per front

foot, and then and there deliver to said principal his promissory notes representing the remaining two-thirds of said value payable in equal annual amounts in one, two, three, four and five years thereafter with interest thereon at the rate of five per cent per annum payable semi-annual-ly, secured by a first mortgage on said property which mortgage shall provide for the release of any part thereof not less than one hundred feet in width from north to south upon the payment of one hundred and twenty-five dollars per front foot to be applied as part payment upon the next maturing one of said notes; and upon the making of said cash payment and the execution and delivery of said notes and mortgage securing same, the said agent shall be absolute owner, indefeasibly, in fee simple of said lands.''

It was agreed that upon the expiration of the contract by limitation the ''agent'' should reconvey all land which had not been meanwhile sold ''provided said agent shall not meanwhile have become the owner thereof as herein-above provided.'' The ''agent'' was to furnish the ''prin-cipals'' itemized statements covering each and every sale made and should keep permanent records which should be open to the inspection of the ''principals'' at any time. The ''agent'' was required to establish concrete monuments marking the exact boundaries of lands sold. The ''agent'' was required to make all payments made under the agree-ment to Bula Croker, whose receipt for the same should be given. In the event of her death the payments were to be made to Richard Croker, or his executors, administrators or assigns.

The day upon which the above agreement was executed, and in furtherance of the plan outlined by it, the Crokers executed and delivered to McDonald for a consideration of ten dollars each and other valuable consideration two deeds of conveyance vesting the legal title of the lands described

in McDonald. Those deeds were duly recorded, but the agreement was not.

The testimonium clause of the agreement was as follows:

"WITNESS our hands and seals this 12th day of July, A. D. 1920, at West Palm Beach, Florida." It was signed by Richard Croker and Bula Croker, each "Principal," and J. B. McDonald, "Agent," but no seal, scroll or device of any kind was placed opposite their names, nor was scroll or device referred to in the agreement and adopted by the parties as their seal. The agreement was signed by two persons as witnesses. The execution of the instrument was acknowledged by the Crokers and McDonald before a notary public.

These instruments, the two deeds and the agreement, constituted an express trust, as between the parties and their privies, under which the trustee, McDonald, was charged with certain duties coupled with an interest in the monetary profits resulting from his activities under his duties as trustee. It was an express trust because the parties to the deeds at the time of their execution expressly impressed the title with the nature and character of a trust. See Semple v. Semple, 90 Fla. 7, 105 South. Rep. 134; Lines v. Darden, 5 Fla. 51, Reid v. Barry (Fla.) 112 So. 846.

It was an active trust because the trustee was required and empowered under the terms of the agreement to perform certain duties; the manner of the performance of which was left largely to his discretion. See Jorrolmon v. Massengill, 86 Tenn. 81, 5 S. W. Rep. 719; Cooper v. Cooper, 36 N. J. Eq. 121; Perkins v. Brinkley, 133 N. C. 154, 45 S. E. Rep. 541; Dodson v. Ball, 60 Pa. St. 492, 100 Am. Dec. 586; Flaherty v. O'Connor, 24 R. I. 587, 54 Atl. Rep. 376; Cone v. Dunham, 59 Conn. 145, 20 Atl. Rep. 311, 8 L. R. A. 647; Freer v. Lake, 113 Ill. 662, 4 N. E. Rep. 512; 1 Perry on Trusts and Trustees, Sec. 18.

It was a private, discretionary, active, trust. See 1 Perry on Trusts and Trustees, (6 Ed.) Sec. 19.

The purpose of the trust was to effect a sale of the property through J. B. McDonald in whom the title should be vested with power of sale coupled with an interest in him to a portion of the proceeds of sale above a certain fixed and limited price per front foot, measured from north to south and in tracts not less than one hundred feet wide. McDonald's interest consisted of the proceeds of the sale of lots in excess of one hundred and fifty dollars per front foot and interest on that valuation at six per centum per annum from the date of contract to the date of sale and taxes paid by the principal as apportioned to the particular lots sold.

Soon after the completion of this transaction the Crokers left the country on their visit to Ireland and Richard Croker died in that country in April, 1922.

In the meantime, soon after the completion of the method of holding and selling the lands as above recited, McDonald having perfected with certain of his associates named Anthony and Graham the organization of a corporation called Palm Beach Estates, executed and delivered to the Corporation a deed conveying the lands to it and by a separate instrument assigned to the Corporation his agreement with the Crokers, the Corporation obligating itself to perform, comply with and carry into effect each and every the agreements to be carried out and performed by McDonald. By another agreement with the Corporation of the same date McDonald was made the sole and exclusive sales agent of the lands, for which service he was to be paid by the Corporation a real estate broker's commission of ten per cent of the total amount of the selling price of each tract of land so sold. Between October 25, 1920, and March 31, 1921, the Corporation expended approximately five thousand dollars in surveying, grading and clearing the

land and advertising the property for sale. No sales were effected.

In December, 1923, Bula Croker, who under the will of her deceased husband was executrix and sole beneficiary, made demand on McDonald for a reconveyance of the land and an accounting and on December 8, 1923, exhibited her bill in chancery against him, Palm Beach Estates and Otto Kahn, whom it was. alleged claimed some interests in the land.

The prayer of the bill was that the "trust agreement" be cancelled; that the deeds of conveyance from Richard Croker and Bula Croker to McDonald be cancelled, and likewise the deed from McDonald to Palm Beach Estates; that the complainant be decreed to be the legal owner in fee simple of the lands and that "Palm Beach Estates be ordered and directed to reconvey said premises" to the complainant and that it be enjoined from "deeding said premises to any other person;" and for an accounting. On February 26, 1924, leave was obtained by the complainant to file an amended bill of complaint and dismiss Otto Kahn as a party defendant. The amended bill was filed. That bill was amended March 14, 1924.

On December 20, 1924, complainant obtained an order permitting her to file a "bill of complaint to be designated as complainant's amended bill of complaint," which was done and then on January 28, 1925, upon stipulation of counsel the court made an order permitting complainant to withdraw from the files the pleading designated as "Complainant's Amended Bill of Complaint as of December 20th, 1924," and to substitute therefor the further Amended Bill of Complaint designated "Complainant's Fourth Amended Bill of Complaint." So that after about thirteen months from the filing of the original bill the complainant's case

was finally stated in the Fourth Amended Bill of Complaint.

The presence in the record of so many bills, amendments and orders not chronologically arranged in the record and not necessary to be included in it has rendered it somewhat tedious, if not difficult, to make a statement of the pleadings.

In the meantime the defendants had demurred and interposed answers and counter claims to which were attached copies of bills in other causes.

The order of January 28, 1925, allowed the defendants until February 10, 1925, to "file such further pleadings as they may be advised to said 'Fourth Amended Bill of Complaint,'" and if such further pleadings were not filed within that time then the amended answer and counter claim which had been filed by the defendants on October 15, 1924, should be taken and considered as an answer and applicable to the Fourth Amended Bill of Complaint.

The answer and counter claim of the defendants appear in full in the record and constitute the defense interposed to the cause as finally stated in the Fourth Amended Bill of Complaint.

The original bill was framed upon the theory that the transaction referred to created a trust; that McDonald was trustee and the Crokers the beneficiaries; that the nature and character of the trust as well as the powers of the trustee were all definitely defined by the agreement; that the trustee had violated the trust in such manner as to entitle the complainant, surviving beneficiary under the terms of the agreement as well as the will of her husband, to a reconveyance to her of the legal title and an accounting from the trustee.

The last bill of complaint rests upon a different theory. No mention is made of a trust and the agreement is referred

to as a "contract of agency;" that McDonald was merely the agent of the Crokers and his powers, authority and duties were prescribed and limited by the words of the agreement; that he was merely their attorney in fact, employed merely to sell the property for them. It is alleged that McDonald was appointed the agent of the Crokers because of their confidence in him, "his honesty, integrity and personal fidelity," their desire to sell the land, their contemplated "extended trip abroad" and in consideration of the opportunities offered by the mutual "covenants and agreements" for "mutual benefits and profits to accrue" to the complainant and her husband and J. B. McDonald. It is alleged that McDonald's activities under his agency were detrimental to the interests of the complainant, amounted to a breach of the "trust and confidence that had been reposed in him;" jeopardized the complainant's interests and property rights and amounted to a legal fraud upon her.

The prayer is that the Palm Beach Estates be decreed to hold the title in trust for the complainant; that the "contract of agency" be terminated and every "right or title of every nature or kind whatsoever of the said J. B. McDonald or said Palm Beach Estates" in and to the lands be released and discharged "from any obligation of any nature or kind whatsoever under and by virtue of said contract of agency to the said defendant, J. B. McDonald;" that an accounting be had as to "such sums of money, if any" as McDonald and the Palm Beach Estates have "honestly disbursed in caring for or protecting the lands aforesaid," which sum the complainant offered to refund.

Reduced to its last analysis, the last bill is one to revoke an agency and for an accounting.

We do not agree to the theory on which the bill was

formed. Its allegations admit the existence of all the elements constituting a valid, express, active, private, discretionary trust. There was the vesting of the title to the land in McDonald by deeds duly executed and acknowledged; there was the written agreement showing that the purpose of vesting the title in McDonald was other than the words of grant and inheritance in the deed implied; there was the element of "confidence in the honesty, integrity and personal fidelity" of the grantee, which is the heart and soul of a trust; the element of discretion in the trustee as to the manner of his execution of the duties imposed by the trust, as well as the interest which he acquired by the transaction in the potential profits over the amount agreed on as a price for the land to be realized by the complainant; and the further element of a right to become the owner of all the unsold portions of the land at an agreed price, the whole sustained by a valuable consideration expressed and acknowledged in the instruments.

If it was a mere agency without any of the elements of property rights in the agent it could be revoked at the pleasure of the principal, in fact would probably have been terminated on the death of one of the joint principals. See Johnson v. Wilcox, 25 Ind. 182; Weaver v. Richards, 144 Mich. 395, 108 N. W. Rep. 382, 6 L. R. A. (N. S.) 855; 2 C. J. 546; Dallam v. Sanchez, 56 Fla. 779, 47 South. Rep. 871; McGriff v. Porter, 5 Fla. 273; Mills v. Smith, 193 Mass. 11, 78 N. E. Rep. 765, 6 L. R. A. (N. S.) 865, and note.

The amended answer and counter claim of the defendants interposed on the 15th of October, 1925, sets out in full detail the history of the transaction, the purposes to be accomplished by the parties, the plan of operations; the knowledge and consent to those plans by the complainant; the knowledge of the Palm Beach Estates and the in-

corporators of that Corporation of the terms and conditions on which the title was vested in it to the land; the fact that while it held the title it acquired only what interest McDonald had in the profits or excess price of the lots fixed by the agreement; the corporation's activities in surveying the land and grading it preparatory to offering it for sale. It is averred that it was all done with the knowledge and consent of the Crokers; that no damage or injury to them had resulted; that the entire plan, scheme and design was conceived in honesty of purpose and carried out in good faith, and the defendants make an offer to purchase all the unsold land at the price and upon the terms agreed on between the original parties and tender such performance and keep the tender good by bringing the cash payment into court together with the notes and mortgage to secure the balance according to the terms of the agreement.

The answer is very voluminous, covering about sixty-eight pages of the record, the exhibits about thirty-six more, but after a careful examination of it we find nothing impertinent or scandalous in it to justify exceptions and motions to strike any portion of it.

All the averments in the answer and counter claim relate to the transaction, are admissible in evidence, and have an influence or bearing upon the decision to be rendered. See Bush v. Adams, 22 Fla. 177; Robertson v. Dunn, 45 Fla. 553, 33 South. Rep. 530; Holdendorf v. Terrell, 52 Fla. 525, 42 South. Rep. 584; Law v. Taylor, 63 Fla. 487, 58 South. Rep. 844; Trustees Internal Imp. Fund v. Root, 63 Fla. 666, 58 South. Rep. 371; Woodford v. Dykes, 67 Fla. 118, 64 South. Rep. 451; Boca Grand Investment Co. v. Blanding, 77 Fla. 536, 81 South. Rep. 886.

The motion to strike and the exceptions are also very full. An examination of these separately and in detail

reveals no error committed by the chancellor in overruling them.

As stated, the transaction constituted a trust as shown by the written instrument executed at the time of the execution of the two deeds by the Crokers to McDonald and admitted by the parties in their pleadings. The rule is that when a holding of the legal title is shown by any competent written evidence to be a holding only as trustee the door will be open for the admission of parol evidence to explain the position of the parties. See 1 Perry on Trusts and Trustees (6 Ed.) 81; Hollingshead v. Allen, 17 Pa. St. 275; Prevost v. Gratz, 1 Pet. C. C. 364; Morton v. Tewart, 2 Younge & Coll. (Chancery) 66; Taylor v. Taylor 1 Atk. 447 (Eng.).

This Court has repeatedly recognized the doctrine that resulting trusts which are not within the Statute of Frauds may be proved by parol but the evidence to establish it must be clear, strong and unequivocal so as to remove from the mind every reasonable doubt as to the existence of the trust. See Lofton v. Sterrett, 23 Fla. 565, 2 South. Rep. 837; Geter v. Simons, 57 Fla. 423, 49 South. Rep. 131; McGill v. Chappell, 71 Fla. 479, 71 South. Rep. 836.

The trust in the case at bar, however, is an express trust and within the Statute of Frauds so that a written instrument signed by the parties is necessary to establish it. See Section 3791, Revised General Statutes 1920. But when once established every "principle of law, of logic, of philosophy, and of common sense," demands "that, in order to decide with accuracy upon the character of any phenomenon or transaction, we must know all the facts of which it consists, and all the circumstances that are truly connected with and influence it," said the Pennsylvania Supreme Court, speaking through Mr. Justice Lowrie, in the Hollingshead-Allen case, *supra*.

We think that principle applicable here. The parties intended to create a trust. They did so by vesting the title to the land in McDonald by deeds which upon the face of them showed a conveyance of the fee simple with words of grant, inheritance and warranties inconsistent with the purpose of creating a trust, and then by an instrument in writing, concerning which there is no dispute, declared what the purpose of the conveyance was, thus creating an express trust. Now, the trust being established it is essential to know all the circumstances in connection with the transaction in order for the court accurately to determine the relations, duties, and powers of the parties with respect to the subject matter of the trust.

We are also of the opinion that the option to purchase contained in the agreement is enforceable even if the agreement should be held to be not under seal because that formality of the statute was fully observed by the execution of the deeds of conveyance whereby the legal title became vested in McDonald; that his right to purchase did not depend upon his having first made a sale of any portion of the land; that he could purchase all or any portion of it unsold by paying the price agreed upon and complying with the terms of the agreement.

We are of the opinion that the rulings of the chancellor were correct and the orders appealed from are therefore affirmed.

Affirmed.

Whitfield, Strum, Terrell and Buford, J. J., concur.

Brown, J., disqualified.