PALM BEACH COMPANY, a corporation, *Appellant, v.* PALM BEACH ESTATES, a Florida corporation, et al., *Appellees.*

148 So. 544.

Division A.

Opinion filed May 5, 1933.

*Clark & Ellis* and *Loftin, Stokes & Calkins,* for Appellant.

*Fancher, Paty & Warwick, C. D. Blackwell, Blackwell, Donnell & Moore, Wideman, Wideman & Wardlaw, J. Field Wardlaw, John B. Singletary, E. D. Treadwell* and *Treadwell & Treadwell,* for Appellees.

DAVIS, C. J.—Palm Beach Company, the appellant, was heretofore denied leave in the court below to intervene in the case of Bula E. Croker v. Palm Beach Estates and J. B. McDonald. The petition denied set up the intervenor's claim to a fund in the custody of the Clerk of the Circuit Court amounting to $321,104.75. That order refusing the intervention was appealed. But on February 14, 1933, the order appealed from was affirmed by this Court. See Palm Beach Co. v. Croker, 108 Fla. 265, 146 Sou. Rep. 230.*

The present appeal is from a denial by the same Chancellor of Palm Beach Company's second petition for intervention seeking to assert a claim on the same fund in the registry of the Court, but a claim of a different character.

The intervention before us now is based on a claim of right to enforce against the fund in court an alleged lien arising out of a supposed mortgage of the deposited moneys given to appellant by Mrs. Bula E. Croker. The alleged mortgage was made on May 6, 1930, and is shown to have been given to Palm Beach Company to secure a contemporaneous loan to Mrs. Croker of $300,000.00 by that Company. On the former petition which was denied, the asserted claim of right to intervene was bottomed on an alleged conditional assignment of the fund in Court under

---

*For other phases of this litigation see Croker v. Palm Beach Estates, 94 Fla. 171, 114 Sou. Rep. 225; Palm Beach Estates v. Croker, 106 Fla. 617, 143 Sou. Rep. 792.

a written assignment of same in 1924 by Palm Beach Estates to Palm Beach Company, the intervenor.

By stipulation of the parties, approved by this Court, the transcript of the record on the first appeal by Palm Beach Company is made a part of the record on this appeal.

The record now before us accordingly shows the following facts: that on October 15, 1924, Palm Beach Estates, one of the defendants in the original suit brought by Mrs. Bula E. Croker, deposited with the Clerk of the Circuit Court of Palm Beach County, the sum of $529,466.00 as and for a tender by it to Mrs. Croker of its initial or cash payment on the contract then in controversy; that Palm Beach Company. the appellant in this case, initially owned the original sum of $529,466.00 and claimed to own the remnant thereof, to-wit: $321,104.73 left in the registry of the Court; that said sum had been advanced by Palm Beach Company to Palm Beach Estates to be deposited by the latter company for the purpose aforesaid; that the sum deposited had been assigned and set over by Palm Beach Estates to Palm Beach Company by the assignment in writing (referred to and discussed in this Court's opinion filed February 13, 1933); that the assignment had been brought to the Court Clerk's attention contemporaneously with the advancement of the money to Palm Beach Estates, so that the said Clerk could pay the same over to said Palm Beach Company if and when the Court ruled that Mrs. Croker could not be required to accept the deposit, as tendered; that Palm Beach Estates had no assets of substantial value other than its interest in its contract with Mrs. Bula E. Croker and would not have advanced said moneys except on the condition aforesaid; that the Circuit Court, pursuant to its decree and the mandate of the Supreme Court, had directed that said sum of $321,104.73 be held by the Clerk for the use and benefit of Bula E. Croker subject to the

provision of the Court's modified final decree, but that said decree conferred no rights upon Mrs. Croker in or to said sum of money in the event of a failure of Palm Beach Estates to perform the decree of specific performance on its part; that Palm Beach Estates and J. B. McDonald had failed to perform the decree on their part, so Palm Beach Company was entitled to intervene and have the money decreed to it under its assignment from Palm Beach Estates. It was specifically charged in that intervention that the Clerk of the Circuit Court held the money for intervenor, Palm Beach Company, and that said intervenor was entitled to have same paid over to it, and that *no other person, firm or corporation had any right, title or interest in the said moneys, nor any lien thereon.*

The Chancellor held otherwise and dismissed the intervention on its merits, which ruling, as we have stated, was affirmed by this Court on the first appeal.

The necessary meaning of the Court's decision on the first intervention by Palm Beach Company was that the money in the registry of the Court had, by reason of Mrs. Croker's compliance with the terms of the modified final decree, become vested in Mrs. Croker as a part of the purchase price of the land that had been tendered to her, and by her accepted after decree of the Court requiring her to specifically perform in consideration of performance by the other parties of their obligations under the specifically enforced contract.

On its first intervention, the position of Palm Beach Company was that since it had lent, or advanced, the money deposited by Palm Beach Estates in the registry of the Court, to Palm Beach Estates for that purpose, and was not a party to the original suit, that it should be allowed by intervention to become a party to the litigation in order that it might claim the money in its own right as an as-

signee of the Palm Beach Estates. This was also on the
theory that Palm Beach Estates, though in default in com-
pliance with the Court's decree of specific performance,
was still the owner of the money on deposit in the Court's
registry and being such owner, Palm Beach Company had
by reason of the owner's assignment become entitled to re-
ceive the sum in the owner's stead. The first intervention
was therefore in substance and effect an effort to recover
the deposit in Court upon the representation in the inter-
vention petition filed by Palm Beach Company, that Palm
Beach Estates, having had title to the money at the time of
its deposit in the registry of the Court on October 15, 1924,
still retained that title as against Mrs. Bula E. Croker, so
as to make the fund subject to the claim of intervenor un-
der the Palm Beach Estates' assignment.

The record showed on the first appeal that prior to Palm
Beach Company's intervention that the Court had decreed
that the money in question should go to Mrs. Croker and
become her property under the final decree as modified, a
finding which was evidently satisfactory to all parties to
the original suit since none of them had appealed from the
modified final decree.

The unquestionable conclusion involved in the Court's
adjudication overruling the first intervention was plainly
to the effect that, Palm Beach Company had failed to show
any title in, or any lien upon, the fund that had been ad-
judicated to Mrs. Bula E. Croker as against Palm Beach
Estates, the depositor thereof (which Palm Beach Estates
was also Palm Beach Company's alleged assignor), that
petitioner, Palm Beach Company, as an intervening claim-
ant, was without any right, title, interest or lien at all on
the fund in Court, and therefore should have its interven-
tion dismissed on its merits. This was on the legal prem-
ise that the money then in the registry of the Court had

been deposited there by the defendant, Palm Beach Estates, as its own unconditional and continuing offer to the complainant, Bula E. Croker, to accept same for and on account of the purchase price of the land due to be paid upon specific enforcement of the contract, and that, as between Bula E. Croker and Palm·Beach Company, which had lent or advanced it, the right to the fund in Court had by virtue of the Court's decree become vested in Mrs. Croker under a title derived from Palm Beach Estates, the depositor and original owner of the fund.

The petition for intervention considered on the present appeal is based upon a note of Bula E. Croker, secured by a mortgage on the land in litigation. Both the note and mortgage were made on May 6, 1930, in the course of, and with specific reference to, the pending litigation determined in the main suit. By their terms an indebtedness of $300,000.00 was to become payable to Palm Beach Company five years after date, with interest at six per cent per annum, subject, however, to an earlier maturity if the appeal of Palm Beach Estates and J. B. McDonald, v. Bula E. Croker, then pending in the Supreme Court should be earlier decided.

Laying aside for the present all consideration of any of the other points raised and argued on this appeal, we find that the note and mortgage now relied on by appellant as the indispensable basis of the lien claimed on the fund in Court is not unconditional in its terms. It expressly provides that any lien on moneys shall be based upon certain contingencies and that such lien would come into existence only in the event the Palm Beach Company should become entitled to receive any *moneys* by reason of any obligation, indebtedness, contract, promissory notes and/or mortgage involved in or growing out of the subject matter of the appeal. The contingencies stated in the note and mortgage

upon which appellant's rights depend are two in number: (1) that the appeal of Palm Beach Estates and J. B. McDonald against Bula E. Croker should be determined "Favorably" to Mrs. Croker; (2) or that the subject matter involved in the appeal should be amicably settled, and such settlement or adjustment result in Mrs. Croker's becoming entitled to receive any moneys by reason of any obligation, indebtedness, contract, promissory note and/or mortgage.

In short, the note and mortgage of May 6, 1930, from Bula E. Croker to Palm Beach Company covers the land in any event. But such note and mortgage covers only such moneys as may fall within the precise description and contingencies stated in the note and mortgage as above set forth.

The appellant Palm Beach Company, in its first intervention, put a practical construction upon its own mortgage to the effect that the money now in the registry of the Court, which money had only come to Mrs. Croker as her property by virtue of the final decree entered by the Court below pursuant to the mandate of this Court, was not included in the mortgage to it from Mrs. Croker, nor claimed as such.

This conclusion is warranted by the fact that in intervenor's first petition, the Palm Beach Company alleged that Mrs. Croker never had any interest, legal or equitable, in the $321,000.00 then in the registry of the Court. The practical construction suggested is entirely consistent with the language of the mortgage and indeed, without the aid of such practical construction, we would feel inclined to hold that the moneys now in the registry of the Court constitute no part of the mortgage security contemplated by the mortgage of May 6, 1930, for the reasons hereafter suggested.

The appellant, Palm Beach Company, is shown by the

record to have been under some kind of a contract or understanding with Palm Beach Estates to furnish the latter the money representing the entire purchase price of the land, in the event Palm Beach Estates should be successful in its attempt to secure specific performance of Mrs. Croker's agreement to convey the title. On May 6, 1930, the date Mrs. Croker borrowed $300,000.00 from appellant, and gave the note and mortgage here in controversy as security for its repayment, the litigation between Mrs. Croker on the one hand, and McDonald and Palm Beach Estates on the other, had been going on for several years. Mrs. Croker was asserting that the McDonald contract was void and that the deed Palm Beach Estates held to her property was ineffective. Contrary to this, Palm Beach Estates was vigorously contending that the contract and deed were both valid and that by reason thereof Mrs. Croker should be compelled to accept the purchase price and convey the land as provided in the McDonald contract. At that time the money in the registry of the Court was, according to the decision of this Court, not Mrs. Croker's money but the money of Palm Beach Estates, the tenderer.

Under the circumstances and in view of the recitals in the note and mortgage relied on in the present intervention, it can hardly be said that such note and mortgage to Palm Beach Company executed by Mrs. Croker on May 6, 1930, was intended to create any lien on the particular moneys then on deposit in the registry of the Court presumably as the moneys of Palm Beach Estates and not the moneys of Mrs. Croker.

Such moneys Mrs. Croker was at that time refusing to accept. Both the ownership and right to withdraw such moneys she had repeatedly theretofore denied. Such position on her part was consistently maintained by her up until the very day she was required by a Circuit Court de-

cree to accept the remnants of the moneys in Court and in consideration of the Court's decree of specific performance convey her lands in compliance with directions embraced in the mandate from this Court.

The obvious intent and meaning of the mortgage appears therefore plainly to the effect that if Mrs. Croker should win her contest with Palm Beach Estates and should not be compelled to accept the purchase money and notes and convey her lands, that then the land mortgaged by her should stand as security for the mortgage debt to the extent "necessary" to repay it according to its terms, while if Mrs. Croker should lose or amicably settle her contest, so that the land could not be retained by her to stand as the mortgage security that in such event the mortgagee should acquire a lien on moneys or other negotiable obligations accruing to Mrs. Croker as the payment for her land.

But the present situation is one wherein neither result obviously contemplated by the parties as a contingency under the mortgage has taken place. Mrs. Croker has lost her suit, but still has her land. And although she has lost in the litigation, she has nevertheless become entitled to a fund in Court which has accrued to her as a part of the initial payment for her land. But that fund was ordered paid to her, not because she won, but by reason of the fact that she lost her case, and the adversary parties defaulted after final decree.

Such, therefore, is an unexpected result that certainly could not have been within the original contemplation of the parties to the mortgage, because the Palm Beach Company, at the time the mortgage was made, was the admitted ally of the Palm Beach Estates company, in an attempt to enforce conveyance of the land. It was apparently obligated to support Palm Beach Estates financially in a way that, had it done as it was apparently obligated to do, the

present result which has been indirectly occasioned by its own conduct toward Palm Beach Estates, could never have occurred.

A party cannot be presumed to have contracted with another on the basis of his own anticipated and intended breach of his existing contractual obligation to a third person. The presumption, if any is to be indulged, should be that a person so contracting did not intend to enter into a contract with one, in consideration of his intended breach of his own contract with someone else.

We hold therefore that on the merits of the claim asserted by the intervention now before us on the present appeal, that Palm Beach Company has shown no lien on the fund in Court, even if that question were unaffected by any prior adjudication heretofore made against it on an earlier claim for intervention which has been denied. The fund in Court is not a part of any fund contemplated in, or intended to be covered by, the Bula E. Croker note and mortgage of May 6, 1930, and this fact is plainly deducible from the face of the record as it now stands. So the denial of the intervention was proper on that ground if no other.

But reverting to the claim of estoppel against the appellant, we find that the same subject matter that is involved on this appeal was involved on the prior appeal. In that proceeding, appellant's claim was a claim *in rem* asserted as against the identical fund now in Court. On the former proceeding the petitioning intervenor could, by appropriate pleading, have sought the particular relief that he now seeks on his present petition. Before, appellant's claim on the fund was predicated on an assertion that it was entitled to have the fund because it had advanced it conditionally to Palm Beach Estates (not Mrs. Croker) and was entitled to have it back because the condition had failed to mate-

rialize, thereby causing the ownership to the fund to revert to Palm Beach Company, the petitioner.

The former proceeding was decided on the basis of facts alleged in petitioner's pleadings and necessarily found and recognized by the decree of the Court to be true as alleged. The relief sought by petitioner in the former petition for intervention assumed the existence of the particular relationship and status toward the fund in Court that petitioner then asserted to exist. The relief now sought by appellant's new petition abandons what was formerly alleged and assumed in the pleadings a different and inconsistent relationship on petitioner's part toward the same subject matter. In each of the proceedings the parties are the same and the subject matter is the same.

The former petition for intervention is a part of the record in this case and is now beyond the possibility of amendment. By that petition it was unequivocally represented by petitioner that its status toward the fund in Court was that of an owner of the fund under the Palm Beach Estates contract of assignment. The Court has judicially found the representations of fact contained in the former petition to be true, because the former petition was decided on the basis of the opposing parties' implied admission that it was true when they asked for decree against petitioner on the face of the pleadings.

To sustain the present petition would allow petitioner to allege one state of facts for one purpose and in the same suit deny such allegations and set up a new and different state of facts wholly inconsistent therewith, for another purpose.

It is the general rule that where a party to a suit has assumed an attitude on a former appeal, and has carried his case to an appellate adjudication on a particular theory asserted by the record on that appeal, that he is estopped to

assume in a pleading filed in a later phase of that same case, or on another appeal, any other or inconsistent position toward the same parties and subject matter. See Palm Beach Estates v. Croker, 106 Fla. 617, 143 Sou. Rep. 792; Taylor v. Crook, 136 Ala. 354, 34 Sou. Rep. 905, 96 A. S. R. 26; Note 3 Eng. Rul. Cases 327; Mark v. Hyatt, 135 N. Y. 306, 31 N. E. Rep. 1099, 18 L. R. A. 275; Scanlon v. Walshe, 81 Md. 118, 31 Atl. Rep. 494, 48 A. S. R. 488; Norfolk & O. V. Ry. Co. v. Consolidated Turnpike Co., 111 Va. 131, 68 S. E. Rep. 346, Ann. Cas. 1912-A 239; Holley v. Young, 68 Me. 215, 28 Am. Rep. 40.

The foregoing is the doctrine of estoppel against inconsistent positions in judicial proceedings, not the doctrine of *res adjudicata.* It is based upon the theory that where a party has made a record of his own case upon which record he has sought and secured from a court a final judicial order or judgment based on the allegation made by him that the facts of his case as alleged by him in his own pleadings are true, which allegations as to the issuable facts have been likewise accepted by the opposite party as true, for the purpose of having rendered by the Court its final decision or judgment on such record, that thereafter each of the parties is estopped to alter his position on the record to the prejudice of an adverse party, where the parties and the subject matter involved in the litigation remain the same.

The contention of the appellant in negation of the applicability of the foregoing rule to this controversy is that the rule is limited to those cases wherein the party in an earlier suit on the same cause of action has *successfully* assumed a contrary position to the prejudice of his adversary, thereby becoming estopped in a later suit on the same cause of action, from changing his position to the prejudice of his adversary. Citing 21 C. J. 1231-1233.

It is our view in this case that the appellant did *successfully* assume in its former petition for intervention, a certain state of facts as being true. In other words, appellant did in its former suit successfully maintain the allegations of its factual "position," which being conceded on the record to be true as an admitted state of facts, was to that extent "successful," and consequently became a state of fact fixed and final as between the parties *to that proceeding.*

To "sucessfully assume a position to the prejudice of an adversary" within the stated rule, does not at all require that the party to be estopped shall prevail in getting a successful result by way of a judgment against his adversary. Whether he wins or loses his case he may just as effectually become estopped from later changing his *factual* position to the injury of his adversary. It will be at once apparent that *a particular state of facts* set up in a pleading may be altogether successfully assumed, either by the opposite party's admission of them, or by a verdict or finding of the truth of the alleged facts vouched for, and yet the decision on the law of the case go against the party who has succeeded in the establishment of his own allegations of fact.

So in the case at bar it does appear that the appellant was "successful" in establishing the facts it alleged in its former intervention but not the conclusion of law for which it contended on those facts.

The real meaning of the rule concerning estoppels of the kind relied on by appellees is that a party, who in an earlier suit on the same cause of action, or in an earlier proceeding setting up his status or relationship to the subject matter of his suit, successfully assumes a factual position on the record to the prejudice of his adversary, whether by verdict, findings of fact, or admissions in his adversary's pleadings operating as a confession of facts he has alleged, can-

not, in a later suit on the same cause of action, change his position to his adversary's injury, whether he was successful in the outcome of his former litigation or not.

The converse of the rule just stated is that where a state of facts is alleged in a pleading by one party but is denied by the opposite party who prevails by verdict or findings of the Court in sustaining his denial, the party who has successfully assumed a·position of denial of his adversary's alleged facts is likewise estopped to question his adversary's subsequent allegation in a new litigation, of a different state of facts. This is so because for aught that appears to the contrary, the successful party's denial of his adversary's allegations may have been upheld because of the negative implied in the existence of the different state of facts alleged in the new suit.

If the money in Court was advanced or lent by Palm Beach Company to Palm Beach Estates as alleged in the intervention considered on the former appeal, and by reason of such advancement or loan of it, and its deposit in Court, Mrs. Croker has now become its owner under a decree entered against her in the specific performance suit (which decree would be conclusive unless appealed from, modified or reversed) by reason of the fact that the other parties defaulted in complying with such decree, it is plain that appellant's mortgage could not possibly have covered such money in the face of what appellant asserted in the former suit to be the facts of its case, if such facts were true. Having sought and obtained on the basis of what it has heretofore alleged in this same case a final adjudication that even if what it alleged was true at the time, that it had no right, title, interest or lien on the fund in Court, appellant will be held in this case estopped by its former allegations from now changing its position on the record,

to the detriment or prejudice of its adversaries on that same record.

It follows from what has been said that the Chancellor's decree refusing appellant's intervention must be affirmed.

Affirmed.

ELLIS and TERRELL, J. J., concur.

WHITFIELD and BUFORD, J. J., concur in the opinion and judgment.

BROWN, J., not participating.