(74 App. Div. 596.)

## WILSON v. AMERICAN BRIDGE CO.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1902.)

1. NEGLIGENCE—PERSONS ON ADJOINING PREMISES.
    A manufacturer could not object that a child passing along an extensively used path over railroad property, and injured by steam and hot water discharged from the manufacturing plant, was using the path against the will of the railroad.

2. SAME—DISCHARGE OF STEAM.
    Plaintiff, nine years old, while playing along an extensively used path over railroad property, was injured by steam and hot water discharged from a pipe projecting from defendant's manufacturing plant. Such discharge was made only occasionally, and was perilous to people passing along the path. *Held*, that defendant was liable if plaintiff was anywhere on the premises of the railroad in front of this pipe.

3. SAME—PROBABLE EFFECT OF WOUNDS—EVIDENCE.
    In an action for personal injuries, where a physician had described the present condition of plaintiff's wound, it was proper for him to testify as to what the probable effect of such condition would be.

    Adams, P. J., and Hiscock, J., dissenting.

Appeal from trial term, Erie county.

Action by Walt W. Wilson, as guardian ad litem of Alpha C. Pontlitz, against the American Bridge Company. From a judgment for plaintiff for $7,647.97 damages and costs, and an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Louis L. Babcock, for appellant.

Eugene E. Bartlett, for respondent.

¶ 3. See Damages, vol. 15, Cent. Dig. §§ 481, 483.

SPRING, J.   The plaintiff was seriously injured on the 5th day of June, 1901, by hot water and steam discharged from a pipe which projected through the foundation wall of the defendant's building, and he has commenced this action, charging the defendant with negligence. The defendant is a manufacturing corporation, and its plant lies contiguous to the premises of the Pennsylvania Railroad Company in the city of Buffalo.   Across these lands a switch track extends, and patrons of the road have been in the habit of going upon the lands next to the track for the purpose of loading freight.   There was no regular highway, but teams were driven in from Bailey avenue onto these premises, and there was a space from 15 to 20 feet wide, adjoining the railroad track, upon which the teams traveled.   There was no cross street from Lester street to Bailey avenue, and people were wont to pass along a path next to this roadway.   The footpath was worn smooth and bare by extensive traveling, and was 3 or 4 feet in width.   There was a grocery and meat shop on Bailey avenue, patronized extensively by people residing on Lester street; and the usual course taken by them to and from this store was along this beaten path, and many of the employés of the defendant also used it.   Yet this user may not be said to be with the consent of the railroad company, for occasionally its employés sought to prevent travel over its premises, but evidently to no purpose, or else they were lax or acquiescent, for the travel continued to be too frequent for the user not to be known to the servants of the railroad company.   The tracks of the railroad company, the roadway, and pathway were substantially on a level, and were elevated above the surrounding country, and consequently there was an embankment of earth sloping southerly toward the premises and the building of the defendant.   The pipe from which the steam and water were ejected projected through the wall of the defendant's building about 20 inches, and it was 2 or 3 inches in diameter, and it was about 4 feet above some tiling on the defendant's premises.   The south rail of the nearest railroad track was approximately 38 feet from the wall of the defendant, and $3^6/10$ feet above the pipe, while the brink of the embankment along which the footpath was worn was $1^{35}/100$ feet above the extended line of this pipe, and from this path down the slope to the tiling was about 12 feet.   The boundary line of the defendant extended less than 10 feet northerly of its building, and whatever was forcibly emitted from the pipe struck the embankment on the lands of the railroad company.   In the operation of its plant the defendant's employés used a large hammer, operated by steam; and, whenever its use was commenced, for a short time thereafter steam and water were forced violently through this exhaust pipe.   The hammer struck from 200 to 250 blows a minute, and the expulsion of the steam and water through the pipe was with great force.   The use of this hammer was only occasional, and at times several days elapsed without anything being discharged through the pipe.   On the 5th of June, 1901, the plaintiff, who was a little boy, nine years of age, was playing with a companion along this bank, going toward his home on Lester street, when the water and steam were expelled from this pipe, striking him on the left

hip and leg, and scalding him so that the flesh came off, and injured him permanently.

I do not regard it as very significant in the solution of this case whether or not the plaintiff was a trespasser upon the lands of the rail-road company. The use of the pathway was extensive, and it was no concern of the defendant whether this use was rightful or against the will of the owner. That question might be cogent if the railroad company were the party sued, but it may not be urged to relieve the defendant of liability. Wittleder v. Illuminating Co., 47 App. Div. 410, 62 N. Y. Supp. 297. So, by analogy, it is not important to the plaintiff whether the defendant had obtained permission of the railroad company to emit its hot water upon this embankment; and the lack of license, if such be the fact, may not fasten responsibility upon the defendant for the injuries sustained by the plaintiff if no liability exists otherwise. In this aspect of the case, each, as to the other, may be said to have been upon the premises rightfully, or by the acquiescence of the true owner; and, that being so, the defendant, in the emission of the hot water through its pipe, was called upon to exercise reasonable caution. McCarty v. Railroad Co. (Sup.) 76 N. Y. Supp. 321, and cases there cited. If the plaintiff were upon the pathway when injured, clearly the jury would be justified in finding that his injuries were the result of the negligence of the defendant. The extensive travel along the path must have been known to its servants, or by the exercise of a fair degree of diligence might have been known to them. The jury might well say the forcible discharge of a large volume of boiling water through this pipe into this much-frequented pathway, without any warning or any investigation to ascertain if people were passing along in front of the stream, was negligence approaching a reckless disregard of the safety of others.

This case stands, on the record before us, on a somewhat more narrow margin. The court charged the jury in this language: "The precise point where he was injured is not of material or vital significance in this case, if he was upon the premises of the railroad, except in so far as it tends to throw light upon the main issues here,"—which was duly excepted to. The jury were therefore permitted to impute negligence to the defendant if the boy, when injured, was anywhere on the premises of the railroad company in front of this stream. I think the charge in this respect, in view of the circumstances appearing in the case, laid down the proper rule. The beaten path was three or four feet wide, and was less than a foot and one-half above the continued line of the pipe; and hot water expelled through it would, in any event, with the natural spreading of the stream, reach nearly to the crest of the embankment. Again, it is within common experience that, in passing along an irregular footpath of this kind, travelers do not follow the track closely at all times; and that is especially true of children, and they traveled along this course considerably. The entire distance by the slope to the defendant's premises was less than 12 feet, and all along this open space boys were very apt to wander in their playing, or in passing along to and from Bailey avenue. The witness Ida Buchan testified that she had "seen boys playing around there near the bridge works, and seen them over on the opposite side

of the bridge works, in the pond, and I have seen children coming that way to the meat market."

Another potent factor in determining the defendant's liability is that it was the affirmative act of the defendant's employés which caused the injuries. There are a series of cases cited in the brief of the appellant's counsel, of which Nicholson v. Railway Co., 41 N. Y. 525, Sutton v. Railroad Co., 66 N. Y. 243, and Freeman v. Railroad Co., 54 App. Div. 596, 66 N. Y. Supp. 1052, are types; but in each of these cases there was no act done by the defendant. The negligence, if any, was negative—passive—in its character, which constitutes a clear distinction, recognized in all the authorities. In the Nicholson Case the plaintiff's intestate was passing over the tracks of the defendant, and, at most, was there only by the implied license of the defendant. A bunch of cars standing on the track was set in motion by a violent gale, and ran over Nicholson and killed him. It was held that the defendant owed no active duty to the decedent,—a mere licensee. In the Sutton Case the plaintiff's intestate, also a licensee, was killed by a car running backwards without any human agency setting it in motion. In the Freeman Case the plaintiff, a boy 10 years of age, confessedly sui juris, had left the footwalk, and was going over a curved girder which sustained the bridge. In crawling between the guard wire owned by the defendant and the lamp-post, he was burned by the wire, which had become charged with electricity in some unaccountable manner. He grasped the wire, and received a shock which injured him. There was no evidence of defective construction of the trolley line, and the point was distinctly made in the opinion that there was no active negligence of the defendant. These cases are to be distinguished from the present one, where the positive, direct act of the defendant's agents caused the injuries; and Barry v. Railroad Co., 92 N. Y. 289, 44 Am. Rep. 377, De Boer v. Wharf Co., 51 App. Div. 289, 64 N. Y. Supp. 925, and Walsh v. Railroad Co., 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615, are among the many cases which emphasize this distinction. Again, as already suggested, the plaintiff was not the licensee of the defendant, and that is the marrow of the cases relied upon by the appellant's counsel. In this case the slightest care on the part of the defendant's servants would have obviated any danger. To look out along the course of the projected stream and ascertain if the way was clear required but a moment's time. The deflection of the pipe downward, or to protect it by a hood, could have easily been done, and removed the peril. In Driscoll v. Cement Co., 37 N. Y. 637, 97 Am. Dec. 761, where the plaintiff's intestate, a licensee in the path on the defendant's land, was killed by a rock thrown out of a quarry which the defendant was blasting, and of which the decedent was not warned, the court say at page 639, 37 N. Y., 97 Am. Dec. 761, "that it is but a slight measure of precaution against injury to give notice in season to persons who may reasonably be expected to be within range of such explosion. * * * It was at least due to whoever was within reach to look and see if persons were near, and, if so, to warn them." At best, the use of this steam and hot water with the terrific force in its emission was perilous to people passing along this pathway. Any point between the defend-

ant's premises and the footpath was in close proximity to the latter; there was no fence or guard separating the embankment from the footpath; children were accustomed to pass along there and deflect from the beaten path,—all of which are circumstances bearing upon the defendant's negligence. The plaintiff may not be said to have been careless, and it is not so contended. He had never seen the pipe, had no notice he was in any peril, and was playing in the same locality which he had frequented. See Hoes v. Electric Co., 161 N. Y. 35, 55 N. E. 285.

Dr. Johnson was the physician who attended the plaintiff, and described the extent of the injuries inflicted. The area covered by the scalding was 8 by 15 inches, "extending from the rib down over the hip"; and the flesh and tissues sloughed off, and proud flesh grew in and was scraped off, and skin grafting was twice performed. Ulcerations were occurring at the time of the trial, and the scar tissue was liable to break down at any time. He was asked:

"Can you, with reasonable certainty, determine how long that condition of the breaking down of this tissue will last? A. It may continue for years. An irritation of the clothes may break it down for years to come."

A motion was made to strike out this testimony, which was denied, and an exception taken. The examination continued:

"The muscles immediately beneath the skin where the burn was were burned away,—part of them. That side is not as large as the other side. That will have the effect to draw the spine to that side as it draws the body to that side. I think that condition will be permanent. Q. You can say with a reasonable degree of certainty that that condition will be permanent? A. I think that side will always be drawn,—the body will always be drawn to the injured side. Defendant's Counsel: I move to strike out the answer until the witness can say he can tell with reasonable certainty. By the Court: I will let it stand. Mr. Babcock: As not within the range of expert testimony, and incompetent and immaterial."

The physician had been describing an existing wound, and the testimony objected to related wholly to the probable effect of that precise condition, and not to any new or supposititious disease which might be evolved from it, and I think the evidence was competent. Griswold v. Railroad Co., 115 N. Y. 61, 21 N. E. 726, 12 Am. St. Rep. 775; Knoll v. Railroad Co., 46 App. Div. 527, 62 N. Y. Supp. 16, affirmed in 168 N. Y. 592, 60 N. E. 1113. The judgment and order should be affirmed, with costs and disbursements to the respondent.

Judgment and order affirmed, with costs and disbursements to the respondent.

McLENNAN and WILLIAMS, JJ., concur.

HISCOCK, J. I am unable to agree with the conclusions reached by a majority of my associates in this case, for the following reasons:

1. The trial justice, by his charge and refusals to charge, permitted the jury to find a verdict for plaintiff, although the latter at the time of the accident was several feet out of the path actually used by travelers, and down the embankment towards defendant's works. A recovery has been allowed upon the theory of negligence. There

was nothing defective about defendant's exhaust pipe. It can only be said that it was bound to use reasonable precaution not to injure those who might properly and lawfully come within reach of the escaping steam. Assuming that the railroad company had established a license in behalf of those who desired to travel through its grounds, I do not think that the evidence discloses that by this license people had been accustomed to go where some of the evidence showed this boy was when injured,—several feet down the bank. I do not think the evidence discloses such a prior usage of the embankment where plaintiff might have been, under the evidence, as called upon the defendant to reasonably anticipate that he might be there, and therefore to guard against injuring him by the steam in question.

2. I think the medical evidence which defendant's counsel moved to strike out, at folio 121 et seq., where the doctor testified that certain results "may" follow in the future, was incompetent. I do not think that the doctor's answer came within those rules of reasonable certainty which are applicable to that class of evidence. The question was put to him in proper enough form, and therefore no foundation was laid for an objection to it. The error only appeared when the doctor gave his evidence, and the only way to get rid of it was by a motion to strike out, which the defendant's counsel promptly made.

ADAMS, P. J. (dissenting). While I am quite inclined to take the view of this case indicated in the first paragraph of Justice HISCOCK'S memorandum, I prefer to place my vote for reversal upon another ground, concerning which I feel more certain. I refer to the exceptions taken to certain portions of the evidence of Dr. Johnson, which appear at folios 122 and 123. It seems to me this evidence was clearly incompetent and inadmissible. It amounted to nothing more than the merest conjecture upon the part of the witness as to what might happen in the future. A lay witness could have given the same answer just as well as the doctor, and it would have been quite as valuable, which is equivalent to saying that it was of no value, coming from either source. But it undoubtedly gave the jury an opportunity to speculate, and to assume that what the witness said might happen very likely would happen. I think the damages awarded by the jury in this case were enhanced by reason of this incompetent evidence. The contention of the respondent's counsel that all objection was waived by permitting the questions to be answered is not tenable. The form of the questions was entirely proper and unobjectionable, but the answers were not what the questions called for, and therefore the only thing the defendant's counsel could do was to move to strike them out. For the refusal of the court to grant this motion, I think a new trial should be granted.