73 So.2d 411 (1954)
CARTER
v.
LIVESAY WINDOW CO., Inc., et al.
Supreme Court of Florida. En Banc.
June 1, 1954.
Rehearing Denied July 30, 1954.
Murray Sams, Jr., and Phillip Goldman, Miami, for appellant.
Blackwell, Walker & Gray, Miami, for appellee.
TERRELL, Justice.
Mrs. Cleigh Carter, appellant, brought this action against appellees to recover damages for the wrongful death of her four year old minor son, Karl S. Carter. Summary judgment was entered in favor of Livesay Window Company, Inc. and Concrete Placing Company. The cause was left pending against Mr. and Mrs. Roy C. Johnson. Mrs. Carter has appealed from that part of the order of the Circuit *412 Court granting the motion for summary judgment as to defendant Livesay Window Company, Inc.
The complaint alleges that Mr. and Mrs. Roy C. Johnson were constructing a home at 3191 S.W. 24th Street, Miami, Florida, that appellee, Livesay Window Company, contracted with the Johnsons to furnish pre-cast concrete window frames and set them in the home under construction, that negligence in furnishing and installing said window frames was charged in substance as follows:
"(a) The said defendant was negligent in failing to place or set the said pre-cast concrete window frames properly or securely and/or in a reasonably careful manner;
"(c) Failed to brace or employ other means reasonably necessary to have the said pre-cast concrete window frames set in place;
"(d) they being set in place by the said defendant during the early morning hours of December 1, 1951, at a time when no one connected with the said building or anyone else was present, and knowing, or that they should have known, that no workmen would be present on said date or over the weekend or until the early morning of December 3, 1951; the said defendant further knowing, or should have known, that no work was to be done on the said residence building over Saturdays or Sundays; or
"(e) Failing to apply or use cement or other securing substance to hold the pre-cast window frames in place, or
"(h) that said defendant knew or should have known that the premises in question were in a neighborhood where children of immature years played and frequented, and would be attracted to the premises in question, or in the exercise of reasonable care should have known this."
A pre-trial conference was held, the pleadings were settled, depositions of the owners were proffered and interrogatories were served upon appellee and others. Appellee then moved for summary judgment, to which motion was attached the affidavit of the foreman employed to supervise construction, also the affidavit of Leigh Dixon the employee of appellee who delivered the window frames to the building. Plaintiff filed the affidavits of G.A. Chapman and Carl Esty. After full hearing the trial court entered summary judgment for appellee, a rehearing was denied and this appeal was prosecuted.
Several questions are urged for determination but as Abraham Lincoln once put it if we brush aside the flotsam and jetsam and get right down to hardpan, the only point we have to consider is whether or not the trial court committed error in granting summary judgment for defendant.
Relying on Day v. Norman, Fla., 42 So.2d 273; Boyer v. Dye, Fla., 51 So.2d 727; Lomas v. West Palm Beach Water Co., Fla., 57 So.2d 881; Enes v. Baker, Fla., 58 So.2d 551; Richmond v. Florida Power & Light Co., Fla., 58 So.2d 687; Earley v. Morrison Cafeteria Co. of Orlando, Fla., 61 So.2d 477; and Embrey v. Southern Gas & Electric Corp., Fla., 63 So.2d 258, appellee contends that the decree should be affirmed. For reversal of the judgment appellant relies on Johnson v. Wood, 155 Fla. 753, 21 So.2d 353; Williams v. Board of Public Instruction of Flagler County, Fla. 61 So.2d 493 and Williams v. City of Lake City, Fla., 62 So.2d 732.
We have examined these cases but we do not think they rule the case at bar. There are elements pointing to negligence in this case that were not present in any of them.
Appellee contends that the attractive nuisance doctrine can be invoked only against the owner or one in control of the premises. The courts of this country are sharply divided on the point. United Zinc and Chemical Co. v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615. Section 339 of A.L.I. Restatement, Torts (1934), has to do with the "attractive nuisance" or "turntable doctrine". It imposes liability upon the possessor of land for constructing or maintaining conditions dangerous to children and details the factors that give rise *413 to the doctrine. A majority of the jurisdictions have followed this view, while a minority of the courts permitting recovery in favor of trespassing children in rare instances have completely rejected the doctrine as "sentimental humanitarianism." The rule in this state extends the doctrine to a contractor. Johnson v. Wood, supra. Section 387 of the A.L.I. Restatement, Torts (1934) is to same effect as Johnson v. Wood, supra. Appellee urges that it is not within this rule as it was a subcontractor, that it was not in control of the premises, that it was not on the premises longer than forty-five minutes and that the accident occurred after it had completed its job and relinquished the premises to the contractor or owner.
Whether the deceased child was a trespasser upon the premises in question is not material. Neither is it material whether the window frames installed by the appellee or the house in which they were installed attracted the child. The test to be applied in a case of this type is whether a reasonably prudent person should have anticipated the presence of children or other persons at the place where the appellee created a condition that a jury could find was an "inherently dangerous condition" or a "dangerous instrumentality" like unto an explosive substance, an inflammable material, a live wire or a spring gun. See Florida Power and Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911, wherein this Court quoted with approval 20 C.J. 350; 29 C.J.S., Electricity, § 43; Wittleder v. Citizens' Electric Illuminating Co. of Brooklyn, 47 App.Div. 410, 62 N.Y.S. 297; Wilson v. American Bridge Co., 74 App.Div. 596, 77 N.Y.S. 820.
The rule no doubt stems from the early English case of Heaven v. Pender, 11 Q.B.D. 503, wherein Brett, M.R., speaking for the Court stated:
"Wherever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did not think would at once recognize that, if he did not use ordinary care and skill in his own conduct with regard to those circumstances, he would cause danger or injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger."
This concept of law or duty has been cited with approval in cases bearing resemblance to the case at bar. O'Brien v. American Bridge Co. of New Jersey, 110 Minn. 364, 125 N.W. 1012, 32 L.R.A.,N.S., 980; Murphy v. Barlow Realty Co., 206 Minn. 527, 289 N.W. 563.
By the traditional rule contractors were not liable for injuries to third persons occurring after the work was turned over to the owner. Ford v. Sturgis, 56 App.D.C. 361, 14 F.2d 253, 52 A.L.R. 619. This rule has been modified by extending the doctrine of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696, to building contractors who create inherently dangerous conditions, although the doctrine was originally applied to manufacturers and suppliers of chattels. See Price v. Parks, 127 Fla. 744, 173 So. 903. More recently in Moran v. Pittsburg-Des-Moines Steel Co., 3 Cir., 166 F.2d 908, the Federal Court applied Judge Cardozo's principle of the MacPherson v. Buick Motor Co. case to a contractor who negligently affixed a liquefied petroleum tank that exploded on another's land.
The same principle was embraced in Section 385 of the A.L.I. Restatement, Torts, as follows:
"One who on behalf of the possessor of land erects a structure or creates any other condition thereon is subject to liability to others within or without the land for bodily harm caused to them by the dangerous character of the structure or condition after his work has been accepted by the possessor under the same rules as those stated in Sections 394 to 398, 403 and 404 as determining the liability of one who as manufacturer or independent contractor makes a chattel for the use of others."
The pre-cast concrete window frames involved here were delivered and placed in the wall of the building early Saturday morning. No workmen were on *414 the job and it was known to appellee that no workmen would be on the job until Monday morning, approximately forty-eight hours later. The job was in a residental neighborhood where, as urged by the appellant, there were families with children. In addition to being so close akin to the attractive nuisance doctrine, it is common knowledge that children are as prone to play around houses under construction as monkeys are prone to climb trees. See Atlantic Peninsular Holding Co. v. Oenbrink, 133 Fla. 325, 182 So. 812; Runkel v. City of New York, 282 App.Div. 173, 123 N.Y.S.2d 485. In Puchta v. Rothman, 99 Cal. App.2d 285, 221 P.2d 744, the California Court refused to impose the attractive nuisance doctrine on the owner of a building under construction. Such is not the rule in this state. Despite the foregoing, appellee set up heavy concrete window frames on a narrow ledge or wall of concrete blocks, approximately eight inches thick, they were not mortared to the wall or secured with braces but left to rest on small wooden wedges that served no purpose but to level or plumb the window frame. They were left in this condition for two days, one of which was Sunday. The window frame that fell on and killed appellant's child weighed 325 pounds. It was stated in the affidavit accompanying the motion for summary judgment that the window frames were "tipply" to such an extent "that even a slight wind or other similar force" would cause the frame to fall.
It is too well settled to require citation of authority that the trial judge cannot grant summary judgment where a material issue of fact is presented by the affidavits or other evidence offered with the pleadings. It is not controverted that the window frame that fell and caused the death of appellant's minor child weighed 325 pounds; that it rested on wooden wedges; that they were not cemeted or mortared to the wall and were not braced. Whether or not it was the practice to brace or secure them under the circumstances is controverted by the affidavits. Essentially the circumstances, the admitted and the disputed facts present a jury question.
The judgment appealed from is accordingly reversed.
Reversed.
ROBERTS, C.J., HOBSON, J., and ROGERS, Associate Justice, concur.
THOMAS, SEBRING and DREW, JJ., dissent.
ROBERTS, Chief Justice.
I concur in the judgment of reversal of Mr. Justice TERRELL. It is a matter of common knowledge, of which this court can take judicial notice, that the construction and erection of a new home is attractive to children. It is something new and creative and a challenge to their imagination. A casual drive through an area in which children reside and in which new homes are under construction will clearly demonstrate the point. The appellee knew, or certainly should have known, that the house was being erected in a neighborhood where children reside and that he was creating the hazard on a Saturday morning when the working crew was not present to secure the frame and in all probability would not return until Monday morning. With this information before him, he placed a 325-pound pre-cast concrete window on edge of an 8-inch masonry wall, supported only by a slight wooden balancing chip. This resulted in a situation somewhat comparable in a lesser way to standing a nickel on edge on the glass top of a desk.
In my opinion, the hazardous situation created was a death trap from which it might normally be expected that some child would be killed or seriously injured. It is incredible that an established business engaged in the distribution of building materials in residential areas would have such an utter disregard for the safety of the children residing in that area. While the appellee was not the owner of the premises, there can be no doubt that it had control of the window frames and, by its actions, created the dangerous situation resulting *415 in the death of the child. See 38 Am.Jur., Negligence, Sec. 155, p. 824; Johnson v. Wood, 155 Fla. 753, 21 So.2d 353.
I agree with Mr. Justice TERRELL that the question of whether the appellee was negligent, under the circumstances, presented a question for the jury, and that it was error to enter summary judgment for the appellee.
ROGERS, Associate Justice, concurs.