609 So.2d 504 (1992)
ED RICKE & SONS, INC., etc., Petitioner,
v.
Demetrius Octavius GREEN, etc., Respondent.
No. 78860.
Supreme Court of Florida.
October 22, 1992.
Rehearing Denied January 5, 1993.
Richard A. Sherman and Rosemary B. Wilder of the Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, for petitioner.
Donald Feldman, Boca Raton, and Patrice A. Talisman of Paul, Landy, Beiley & Harper, P.A., Miami, for respondent.
*505 OVERTON, Justice.
We have for review Green v. Ed Ricke & Sons, Inc., 584 So.2d 1101 (Fla. 3d DCA 1991), in which the Third District Court of Appeal, relying on Palm Beach County v. Palm Beach Estates, 110 Fla. 77, 148 So. 544 (1933), held that Ed Ricke & Sons, Inc. (Ricke) is estopped from introducing newly discovered evidence because the evidence is inconsistent with the position Ricke had taken at previous trials of this case. The district court also held that the rule set forth in Slavin v. Kay, 108 So.2d 462 (Fla. 1959), stating that a contractor is relieved from liability for injuries to third parties occurring after the owner has accepted the project if the owner could have discovered and remedied the dangerous condition, is inapplicable to the facts of this case. We find conflict and have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We find that Ricke was entitled to present the newly discovered evidence, and that, under the circumstances, Ricke falls within the scope of the Slavin doctrine. Accordingly, we quash the decision of the district court of appeal.
This case has a lengthy legal history, including three trials, a final summary judgment, and three appeals. In 1977, Demetrius Octavius Green, a minor, was seriously burned when he fell into a deep puddle of heated water which was discharged from a faulty water heater located in building No. 37 at the James E. Scott Public Housing Project. On May 2, 1980, Green filed a complaint alleging that, in January of 1966, Ricke had contracted with the Dade County Housing Authority to convert hot water heaters from solar power to gas at the Scott Housing Project. Green alleged that the water heater in building No. 37 was negligently installed and that this negligent installation caused Green's injuries.
Ricke answered and pleaded that it was without knowledge as to who installed the defective heater. Ricke then moved for summary judgment on the basis of the Slavin doctrine. The trial court denied that motion.
In 1982, the first trial of this matter ended in a mistrial due to juror illness. In the second trial, the former director of maintenance for Dade County Housing testified that Ricke had installed the water heater in building No. 37. Not having its own records since the heater had been installed fourteen years prior to the filing of the complaint, and knowing that it had installed some water heaters in this housing project, Ricke accepted this testimony and proposed to the court instructions dealing with the negligence theory in that trial. The jury returned a verdict in favor of Ricke. The district court reversed that verdict and remanded for a new trial because Ricke's attorney had violated an order in limine in his closing argument by making known to the jury that there had been a prior lawsuit between Green and Dade County. Green v. Ed Ricke & Sons, Inc., 438 So.2d 25 (Fla. 3d DCA 1983), approved 468 So.2d 908 (Fla. 1985).
On March 24, 1986, two weeks prior to the third trial, Green's attorney informed Ricke that the custodian of the records of Dade County would testify that no building permit had been issued to Ricke for the work performed by it on building No. 37. This testimony would suggest an additional basis of negligence by Ricke in the installation of the water heater. Ricke had previously searched its own records to locate the installation permits, only to find that the records that would have contained the permits had been destroyed during the fourteen years after the work was performed. On April 4, 1986, Ricke advised Green's attorney that it was still searching the public records for the missing permit. During the trial, Ricke discovered the applicable records, which had been misfiled in the Dade County Building and Zoning Department office. The records established that Ricke was not the contractor that had installed the water heater in building No. 37.
Green moved to strike the testimony concerning this newly discovered evidence. The trial judge expressed sympathy for Green's position, but denied his motion, explaining:
I will not let a judgment be entered against someone who was not responsible *506 for it ... because this defendant, if he didn't construct it, certainly should not have it ... entered against him because of poor investigation
... .
The trial judge granted Green a mistrial and gave him two years to conduct discovery to establish that Ricke had installed the defective heater.
Prior to the commencement of the fourth trial set for February, 1989, Ricke moved for a summary judgment on the grounds that: (1) the evidence was now undisputed that Ricke had not installed the water heater that caused Green's injuries, and (2) Ricke was not liable under the Slavin doctrine. The trial judge denied Ricke's alternative theory under Slavin, but granted summary judgment, finding that no genuine issue of material fact existed as to who installed the water heater.
The district court reversed the summary judgment, holding that "Ricke was estopped from introducing evidence inconsistent with the earlier position in the litigation." 584 So.2d at 1103. The court, relying on Palm Beach County, concluded: "Having elected not to dispute this issue at the first trial or on appeal, Ricke is precluded from offering evidence that it did not install the heater in question." Id. On the second issue, the district court affirmed the trial court, noting that gas water heaters are dangerous instrumentalities and, as such, are excepted from the protection afforded by Slavin. The district court stated: "The work in question was the installation of a gas water heater system. Florida courts have consistently held that instrumentalities connected with gas are inherently dangerous. This case falls within the exception to Slavin, and the trial court correctly denied the motion." Id. at 1104 (citations omitted). We disagree with both conclusions.
With regard to Ricke's presentation of newly discovered evidence of nonliability, we find that Ricke did nothing to prejudice Green prior to the expiration of the statute of limitations. Ricke pleaded in its answer that it was without knowledge as to who installed the water heater in building No. 37. Both parties were forced to rely on public officials and public records for information pertaining to the construction of the Scott housing project. Green conducted no discovery before the expiration of the applicable statute of limitations to determine if the correct party had been sued or if any additional party was responsible for the negligent installation. In the prior trial, Ricke accepted the former maintenance director's testimony presented by Green that Ricke had installed the defective heater. This testimony occurred after the statute of limitations on Green's action had run and, therefore, cannot be deemed conduct by Ricke that was prejudicial to Green. Furthermore, the search of the public records that led to the discovery that Ricke had not installed the water heater was actually precipitated by Green's new allegations prior to the fourth trial that Ricke had installed the water heater without a permit.
We reject the district court's view that Palm Beach controls and that Ricke is prohibited from presenting this newly discovered evidence in a new trial. We find that Palm Beach was an equity case, decided in a different era and under different rules. In Palm Beach, the court adhered to a philosophy that original pleadings could not be amended. It stated:
The relief now sought by appellant's new petition abandons what was formerly alleged, and assumes in the pleadings a different and inconsistent relationship on petitioner's part toward the same subject matter... .
The former petition for intervention is a part of the record in this case and is now beyond the possibility of amendment.

110 Fla. at 87, 148 So. at 548 (emphasis added).
The present philosophy, as expressed in our Rules of Civil Procedure, is to allow both plaintiff and defendant to plead alternatively in presenting their claims and defenses, see Florida Rule of Civil Procedure, and that amendments are allowed "[a]t any time in the furtherance of justice, upon such terms as may be just." Fla.R.Civ.P. *507 1.190(e). The purpose of this philosophy is to ensure that the truth of the matter can be determined and that all claims are properly resolved on their merits.
Speaking directly to the issue of new or additional claims in a new trial, we have stated: "`An order directing a new trial has the effect of vacating the proceeding and leaving the case as though no trial had been had.'" Atlantic Coastline R.R. v. Boone, 85 So.2d 834, 839 (Fla. 1956) (quoting 39 Am.Jur. New Trial § 204 (1942)). We find that newly discovered evidence or alternative claims or defenses, whether presented by a plaintiff or a defendant, should be allowed to be presented in any subsequent trial of a cause. The admission of this evidence should be prevented only in those circumstances where a party is misled to his or her prejudice by that party's adversary. The record indicates that Green was not misled in this instance and, in fact, precipitated the discovery of the new evidence by his assertion, as a new basis of negligence, that Ricke had installed the water heater without a building permit. The trial court properly entered summary judgment on this issue.
While the Slavin issue is not controlling due to our resolution of the first issue, we find that it must be addressed to correct an improper application of the Slavin doctrine by the district court. We agree that Slavin would not protect Ricke from liability had Green been injured from hot water caused by a gas explosion of the water heater. In such a situation, Green's injuries would have resulted directly from the inherently dangerous and explosive nature of the gas in the water heater. See Farber v. Houston Corp., 150 So.2d 732 (Fla. 3d DCA 1963). In the instant case, however, hot water was the cause of Green's injuries, not the explosiveness of the water heater. Hot water, in and of itself, is not inherently dangerous and, consequently, the Slavin doctrine would apply to this case. We reiterate what we held in Slavin:
"By occupying and resuming possession of the work the owner deprives the contractor of all opportunity to rectify his wrong. Before accepting the work as being in full compliance with the terms of the contract, he is presumed to have made a reasonably careful inspection thereof, and to know of its defects, and if he takes it in the defective condition, he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author. When he accepts work that is in a dangerous condition, the immediate duty devolves upon him to make it safe, and if he fails to perform this duty, and a third person is injured, it is his negligence that is the proximate cause of the injury."
108 So.2d at 466 (citations omitted) (quoting Casey v. Wrought Iron Bridge Co., 114 Mo. App. 47, 63, 89 S.W. 330, 334 (1905)). We reaffirmed Slavin in our decision in Edward M. Chadbourne, Inc. v. Vaughn, 491 So.2d 551 (Fla. 1986), noting:
The key to our holding in Slavin is the patentness of the defect or the owner's knowledge of the defect and the failure to remedy the defect, not whether the party is a contractor. It would be contrary to public policy as well as good common sense to hold a person, whether characterized as a manufacturer or contractor, strictly liable when the defect is patent or known to the owner.
491 So.2d at 554. The record establishes that the pool of hot water in this case was a patent defect, well known to the owners of the housing project.
For the reasons expressed, we quash the decision of the district court of appeal and remand with directions that the trial court enter a judgment in favor of Ed Ricke & Sons, Inc.
It is so ordered.
McDONALD, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., concurs in result only with an opinion, in which SHAW, J., concurs.
KOGAN, J., concurs in result only with an opinion.
*508 BARKETT, Chief Justice, concurring in result only.
I agree with the majority's conclusion that Ed Ricke & Sons was entitled to present newly discovered evidence, and therefore summary judgment was properly entered. Because the evidentiary issue is dispositive, there is no need for the majority to address in dicta the district court's application of Slavin v. Kay, 108 So.2d 462 (Fla. 1959). Nonetheless, the majority disposes of the Slavin issue and reaches the correct result, but primarily for the wrong reason.
In Slavin, the Court held that a contractor cannot be held liable for creating a hazardous condition where the owner who accepted the contractor's work had the opportunity to detect and correct the hazardous condition but negligently failed to do so. See id. at 467. That is precisely the case here. The record establishes that the hazardous condition caused by the pool of scalding hot water had been open and obvious to the housing authority for many years before the accident at issue, but the housing authority neglected to correct the problem. That intervening negligence cut off the contractor's liability.
The majority seems to recognize this principle. Majority op. at 513. Nonetheless, the majority unnecessarily adds that boiling hot water can never be inherently dangerous within the meaning of Slavin. I disagree with that overly broad conclusion, and I find the majority's reasoning troublesome. Justice Overton's analysis creates the following anomaly: A child is barred from recovering damages from a contractor for injuries caused by boiling hot water that burst out of a hole created when the contractor negligently cracked the gas water heater in installation; but a child may recover when the boiling water burst out of a hole produced when the boiler exploded due to the contractor's negligent installation of the heater. This legal distinction is illogical and will produce unjust results.
SHAW, J., concurs.
KOGAN, Justice, concurring in result only.

I. Dangerous Instrumentality Doctrine
I disagree with the majority's conclusion that hot water is not in itself a dangerous instrumentality, implying that this always is true. There may be cases in which an opposite conclusion would be mandated, and to my mind this is one of those cases.[1] Over and over, our case law holds that it is the use to which the thing is put that may give rise to a dangerous instrumentality, not necessarily the thing's normal qualities. E.g., Crenshaw Brothers Produce Co. v. Harper, 142 Fla. 27, 194 So. 353 (1940); Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920); Seitz v. Zac Smith Co., Inc., 500 So.2d 706 (Fla. 1st DCA 1987). On this question, the facts here are so outrageous as to shock the conscience.
Over an eight-year period,[2] a constantly renewed pool of scalding hot water flowing from a defective hot water heater in a public housing project was allowed to remain in an outdoors location easily accessible to children. The evidence shows that children often played alongside this pool, sometimes warming themselves there on cold days. Just as children often are drawn to the dangers of fire, the dangerous steaming pool of hot water attracted children in the public housing project, ultimately leading to the serious injuries suffered by Green and another child in 1977. I believe the extreme facts of the present case unquestionably show the existence of at least a dangerous instrumentality.
The case law relevant here apparently begins with Carter v. Livesay Window Co., 73 So.2d 411 (Fla. 1954), a case somewhat similar to the one at bar. In Carter, a child went onto a construction site where *509 large pre-cast concrete window frames weighing 325 pounds had been precariously left. One of these fell and killed the child. The parents then sued the contractor who had left the window frames on the property. Id. at 412, 414.
In finding that the contractor's liability posed a jury question, the Carter Court held that the placement of the window sills either was an "inherently dangerous condition" or a "dangerous instrumentality" similar to "an explosive substance, an inflammable material, a live wire or a spring gun." Id. at 413. The Carter Court expressly equated the condition on the construction site with an attractive nuisance unduly dangerous to children. Id. at 412-14.
The rule announced in Slavin v. Kay, 108 So.2d 462 (Fla. 1959), and its attendant exceptions were based directly on the holding of Carter. Id. at 463, 466. Thus, it would seem that any condition that otherwise would qualify as an attractive nuisance would constitute a dangerous instrumentality under the Slavin doctrine, at least with respect to children who are thereby injured. Accord May v. Simmons, 104 Fla. 707, 140 So. 780 (1932).
Under present Florida law, an "attractive nuisance" arises from a condition on property that poses an unreasonable risk of death or serious bodily harm to children, and that is likely to attract children too young to appreciate the danger. Moreover, the utility of the dangerous condition and the burden of eliminating it must be slight as compared with the risk to children involved, and there must be an absence of reasonable care to eliminate the danger or otherwise to protect the children. Martinello v. B & P USA, Inc., 566 So.2d 761 (Fla. 1990).
This appears to be in harmony with a few broad definitions of the term "dangerous instrumentality" employed by Florida courts in various contexts in the past. We previously have stated that a dangerous instrumentality is anything that unless carefully guarded and carefully used is dangerous to others, Crenshaw Brothers Produce Co. v. Harper, 142 Fla. 27, 53, 194 So. 353, 363 (1940), including the use of explosives, vicious animals, or automobiles operating on roadways. Id. at 54-56. The First District has concluded that a dangerous instrumentality includes not only things imminently dangerous, but also things rendered dangerous by defect or by use and operation. Seitz, 500 So.2d at 710. However, some devices such as cars are not inherently dangerous, but only become dangerous instrumentalities through actual use. Id.
The pooling of scalding hot water[3] that occurred here meets all the criteria for a dangerous instrumentality and attractive nuisance discussed above. The pool was a highly unusual and unnatural activity, obviously dangerous, of no utility to anyone, unquestionably not a proper use of hot water, and at the very least a potentially deadly nuisance beguilingly attractive to young and inexperienced children from the housing project who hoped to warm themselves on cold days. The cost of eliminating this nuisance would have been slight  certainly no more than the cost of installing a new hot water heater  compared with the enormous costs of caring for a child like Green, who was burned over his entire body and suffered permanent injury.
I also note that, but for the extreme outrageousness of the danger here and its complete lack of social utility, the pool of scalding water clearly would have constituted an abnormally dangerous activity under established tort principles. As a general rule, an ultrahazardous or "abnormally dangerous activity" is determined if several, but not necessarily all, of the following factors exist:
(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
(b) likelihood that the harm that results from it will be great;

*510 (c) inability to eliminate the risk by the exercise of reasonable care;
(d) extent to which the activity is not a matter of common usage;
(e) inappropriateness of the activity to the place where it is carried on; and
(f) extent to which its value to the community is outweighed by its dangerous attributes.
Restatement (Second) of Torts, § 520 (1977). Here, every factor is present with the exception of (c).[4] The only reason the pool of hot water would not qualify under Section 520 of the Restatement is that the danger was far more extreme even than the typical "abnormally dangerous activity." As the Restatement itself recognizes, an abnormally dangerous activity must at least have some social utility. Id. (comment b). The pool of hot water here had none, and its continued existence thus may have constituted negligence per se. See id.
In fact, the pool of hot water may well have constituted another extreme form of danger recognized by the law  the so-called "absolute nuisance." Under our law, an absolute nuisance is any serious nuisance intentionally created by the defendant; and "intent" can include knowledge that the nuisance exists and is substantially certain to result in an invasion of the interests of another. Deane v. Johnston, 104 So.2d 3, 8 (Fla. 1958). Here, it seems clear that the Housing Authority at the very least knew that the pool of hot water existed and was a serious nuisance substantially certain to cause harm to the children playing near it. Indeed, Green was injured only days after another child was scalded by the pool, and it is clear the Housing Authority knew or should have known about the problem before the injuries occurred. Thus, an absolute nuisance existed.
Because the pool of hot water here qualifies under all of these categories of dangers, I believe it must constitute a dangerous instrumentality as well.
I also do not accept the majority's attempt to distinguish injuries caused by the negligent and hazardous pooling of hot water from injuries caused by a gas explosion that spatters hot water. I see no relevant distinction that, in light of fairness and public policy, would require liability in one but not the other. A pool of scalding water left standing over eight years in a place where children play is a far more dangerous instrumentality to my mind than the one-time threat of an exploding hot water heater. Thus I believe the Slavin doctrine is inapplicable here based on the dangerous instrumentality exception.
Nevertheless, I agree with the majority that the trial court was justified in dismissing the complaint against Ed Ricke on grounds of the newly discovered evidence. This evidence shows that Ed Ricke did not even install the water heater and that Green thus has sued the wrong defendant. I agree with the majority's conclusion that this new evidence is now admissible. As a result, Green is obviously unable to prove the element of causation, and no cause of action exists.

II. The Slavin Issue
I also am troubled by the majority's interpretation of Slavin even apart from its conclusion that Slavin should be applied here. I find that interpretation unnecessarily broad and somewhat inconsistent with the tort theory that now prevails in Florida.
I recognize that elsewhere we have asserted that Slavin is compatible with the present-day framework of comparative negligence, Easterday v. Masiello, 518 So.2d 260 (Fla. 1988), and I continue to agree with this assessment. In saying so, however, I feel compelled to acknowledge that this is a somewhat odd marriage of concepts. Slavin originally was founded on the privity requirement that once placed severe and unfair restrictions on suits by third parties against contractors. The antiquated privity rule now has vanished from this context, but Slavin's patent danger rule remains.[5] There are good reasons for *511 adhering to Slavin, as noted in Easterday. But the majority's analysis makes me question whether we are ignoring the good reasons and allowing Slavin to regress into something incompatible with Florida's present-day doctrine of comparative negligence.
We do well to remember how Slavin came into being. In Edward M. Chadbourne, Inc. v. Vaughn, 491 So.2d 551 (Fla. 1986) (Adkins, J., dissenting), Justice Adkins correctly noted that Slavin originally was conceived as a rather strained way of eroding the old privity requirements still recognized in the 1950s. Thus, Slavin began its life as an exception to a rule of law that, today at least, no longer exists. As such, Slavin's strict language makes assumptions and states rationales that are inappropriate in today's tort-law context, although I believe Slavin's bottom line still is very much alive and useful if properly understood.
It now is clear that the same results could be reached in our recent Slavin cases simply by applying basic comparative negligence principles. For that reason, I have come to regard the Slavin doctrine as a legal principle explainable by reference to the framework of comparative negligence itself. Accord Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977) (common law doctrine of assumption of risk now merged into comparative negligence analysis).
As I read the recent cases, Slavin's modern applications increasingly have been simple judicial determinations that particular contractors have zero-percent liability as a matter of law, and that no reasonable jury could conclude otherwise. Thus, the complaints against the contractors had to be dismissed. Typically this determination is based on the fact that the possessor of the property knowingly instructed the contractor to create the hazardous condition, or the possessor could have appreciated the hazard upon reasonable inspection and did nothing to eliminate the hazard within a reasonable period of time.
In other words, Slavin has become a special application of the rule of concurrent and intervening causes,[6] and no longer need be grounded in the discarded doctrines of bygone times  and especially not the privity requirement. Forthrightly saying so would eliminate much of the confusion that has surrounded this issue and would give far better guidance about how Slavin operates today. Possessors of property naturally risk becoming a concurrent or intervening cause if, through their own omissions, they fail to take reasonable steps to eliminate the obvious, discoverable hazard created on their property by their hired contractors.[7] There is no need to *512 analyze this problem in terms of archaic common law principles, either expressly or implicitly, when the existing structure of comparative negligence is more than adequate.
This same approach also explains the latent danger "exception" to Slavin  which in truth is not an exception at all. In simple terms, the possessor of property has not caused any injury by failing to detect a danger created by a contractor that is not reasonably discoverable through inspection. There is no omission by the possessor and thus no intervening or concurrent cause to wholly or partially supersede the contractor's liability for creating the danger in the first instance.
The dangerous instrumentality exception to Slavin can be understood simply as recognition that some dangers are so obvious and serious that public policy dictates extending liability to a third-party contractor who created the danger  although liability still might be comparatively apportioned with a possessor of property who omitted to eliminate the patent danger within a reasonable time. However, the element of obviousness is crucial here. The contractors themselves would not fall under the dangerous instrumentality exception unless they have created a serious danger that was or should have been obvious to them. Thus, it is possible for a danger to be a dangerous instrumentality as to some potential defendants but not as to others.
The present case illustrates the point. Even assuming that Ed Ricke had installed the hot water heater, the record shows that the dangerous instrumentality here  a pool of scalding water accessible to children  did not actually come into existence until four years after installation. This suggests that the danger was not "obvious" to Ed Ricke,[8] although it clearly was or should have been "obvious" to the Housing Authority by the 1970s. Accordingly, the pool of hot water most likely was not a dangerous instrumentality as to Ed Ricke, although it was as to the Housing Authority.
The result reached by the majority is consistent with this conclusion. However, I believe the majority confuses the issue when it implies that a pool of scalding hot water could never be a dangerous instrumentality as to any defendant. This paints with too broad a brush and inevitably will lead to undesirable results in future cases.
NOTES
[1] However, for the reasons noted more fully below, I conclude that the pool of hot water was not a dangerous instrumentality as to Ed Ricke; but it was a dangerous instrumentality as to the Housing Authority.
[2] The hot water heater apparently began malfunctioning in 1969. Green was not injured until 1977.
[3] I emphasize that it is the pooling of hot water in a public place that was the dangerous condition here. I agree that hot water heaters themselves or the associated plumbing are not dangerous instrumentalities when properly installed and operated.
[4] Obviously, the risk easily could have been eliminated here.
[5] An earlier patent danger rule applicable to products liability also largely has vanished throughout the United States because of its inherent unfairness. See Harnischfeger Corp. v. Gleason Crane Rentals, Inc., 223 Ill. App.3d 444, 165 Ill.Dec. 770, 774, 585 N.E.2d 166, 170 (1991) (citing cases & articles). Florida abolished the doctrine in the products-liability context in 1979. Auburn Machine Works Co. v. Jones, 366 So.2d 1167 (Fla. 1979). The clear trend in tort law is to eliminate the hidebound common law rules that often tended to excuse fault for no good reason. Instead, tort law  and especially the law of strict liability  now is strongly influenced by a risk/benefit analysis that weighs the risks of an enterprise against its social benefits. This analysis attempts to place liability fairly, often by applying the dictum that for-profit enterprises must bear liability for the risks they create. This dictum rests on the policy that liability for risks usually should be borne by the for-profit enterprise itself, not the individuals who suffer because of the risks.
[6] A concurrent cause is one that, acting together with another distinct and separate cause, produces an injury that would not have happened in the absence of either one. Black's Law Dictionary 291 (6th ed. 1991). An intervening cause is broadly defined as a cause that "comes into active operation in producing the result after the negligence of the defendant," W.P. Keeton, Prosser & Keeton on Torts 301 (5th law. ed. 1984), but often is more precisely equated with the term "supervening cause." Compare Black's Law Dictionary 820 (6th ed. 1991) (defining "intervening cause") with id. at 1438 (defining "supervening cause"). A supervening cause is a "new effective cause which, operating independently of anything else, becomes proximate cause of [an injury]." Id. at 1438. It is worth stressing that, in tort law, an omission can be just as much a "cause" as an affirmative act.
[7] I do not believe that the "transfer" of total liability to the possessor should be bound up in technicalities, as it was in early common law. This would be inconsistent with the principles of comparative negligence. To my mind, the possessor could perpetuate the contractor's liability simply by demanding (within a reasonable period of time) repair or replacement, subject to any valid and conscionable terms of the parties' contract. A general acceptance accompanied by payment in full, without expressly waiving the possessor's specific rights, would not necessarily transfer any or all liability to the possessor provided the possessor made a reasonable inspection within a reasonable time and then demanded repair or replacement by the contractor. But in any event, the possessor's comparative liability will tend to increase as time passes if the hazard is not eliminated, simply because the possessor's continuing omissions will tend to create greater fault. A point in time will be reached when the possessor's continuing omissions will become the supervening cause, thereby effectively absolving the contractor of any remaining liability. The failure to demand repair or replacement within a reasonable time will tend to have the same effect, based on the fact that a contractor is deprived of all means of taking corrective action affecting property that now is in the legal control of another unless notice is given and access to the property is allowed. Here, the twelve years that elapsed in the present case, including eight years in which the hot water heater obviously was malfunctioning, clearly would have been sufficient to establish the Housing Authority's omissions as the supervening cause. The same conclusion would flow from the lack of any evidence that the Housing Authority ever demanded repair or replacement by Ed Ricke. Any applicable statutes of limitation or repose will provide further limits on liability.
[8] Other facts might be developed, however, to support a contrary conclusion. For example, a serious and obvious danger might have been established based on evidence that the installer set the hot water heater's thermostat to a dangerously high setting, so that it was probable that scalding water would flow out of the safety duct on the building's exterior and form a pool there. The four-year delay between installation and malfunction suggests this was not the case here.